UNITED STATES of America, et al., Plaintiffs,

v.

MONTROSE CHEMICAL CORPORATION OF CALIFORNIA, et al., Defendants.

**and related claims.**

**No. CV 90–3122–AAH.**

United States District Court, C.D. California.

May 19, 1992.

238

Gerald F. George, Helen Kang, Environment Enforcement Section, Environment and Natural Resources Div., U.S. Dept. of Justice, San Francisco, Cal., Adam M. Kushner, Robert Oakley, Sharon Zamore, Environment Enforcement Section, Environment and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

John A. Saurenman, Deputy Atty. Gen., Los Angeles, Cal., for State of Cal.

Karl S. Lytz, Kim McCormick, Latham & Watkins, San Diego, Cal., for Montrose Chemical Corp. of California.

Paul B. Galvani, Roscoe Trimmier, Ropes & Gray, Boston, Mass., for Rhone–Poulenc Basic Chemicals Co., Atkemix Thirty–Seven, Inc., Stauffer Management Co. and ICI American Holdings, Inc.

Jose R. Allen, Peter Simshauser, Skadden, Arps, Slate, Meagher & Flom, San Francisco, Cal., for Chris–Craft Industries, Inc.

Gregory McClintock, McClintock, Weston, Benshoof, Rochefort, Rubalcava & MacCuish, Los Angeles, Cal., for Potlatch Corp.

Rene P. Tatro, Jeffrey W. Johnson, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for Simpson Paper Co.

David Rosenberg–Wohl, Charles B. Cohler, Scott P. DeVries, Lasky, Haas, Cohler & Munter, San Francisco, Cal., for Westinghouse Elec. Co.

B. Richard Marsh, Wesley Beverlin, Knapp, Marsh, Jones & Doran, Los Angeles, Cal., for County Sanitation Dist. No. 2 of Los Angeles County.

Mary Walker, Stephen L. Marsh, Teryl S. Murabayashi, Luce, Forward, Hamilton & Scripps, San Diego, Cal., for Cities of Chino, Montclair and Upland.

Roger W. Springer, Oliver, Barr & Vose, Los Angeles, Cal., for Cities of Covina, Hermosa Beach and South Pasadena.

## PLAINTIFFS' MOTION FOR ENTRY OF CONSENT DECREE

HAUK, Senior District Judge.

In this action Plaintiffs United States and the State of California have filed a Motion for entry of a consent decree entered into by Plaintiffs and PCBs Defendants Potlatch Corporation ("Potlatch") and Simpson Paper Company ("Simpson").[1] Pursuant to the decree, Potlatch and Simpson are jointly and severally obligated to pay $12 Million to Plaintiffs over the next 4 years in three equal payments of $4 million—the first payment to be distributed within ten days after entry of the decree. In exchange, the settling Defendants receive covenants not to sue and releases from any claims for contribution. The DDT Defendants, non-settling PCBs Defendant Westinghouse, and Third–Party Defendant cities and Cross–Defendant County Sanitation District No. 2 of Los Angeles County ("LACSD") all strongly object to entry of the consent decree.

The Court held a hearing on this matter on May 11, 1992 at which Special Master Judge Peetris was in attendance. The Court gave all counsel the opportunity to question the Special Master with respect to the settlement negotiations undertaken, as well as the procedural and substantive fairness of the proposed consent decree.

The Court has considered everything presented at the hearing, in addition to the Proposed Consent Decree itself, the Motion For Entry of Consent Decree, the Opposition thereto, and the Plaintiffs' Reply, as well as Memoranda of Points and Authorities filed by the parties, together with all the files and records herein.

### I. *Arguments Against Entry Of Consent Decree*

Each of three sets of parties filed a separate opposition to Plaintiffs' Motion For Entry of Consent Decree. First, the DDT Defendants (Montrose Chemical Corporation et al.) challenge both the substantive

and procedural fairness of the proposed settlement. These parties are primarily concerned with Potlatch and Simpson's receipt of "contribution protection." *See* 42 U.S.C. § 9613(f)(2). With the grant of "contribution protection" the non-settling Defendants will be barred from pursuing claims against either Potlatch or Simpson. The non-settling Defendants argue that this result is unfair because, in their opinion, the proposed settlement is disproportionately small in relation to the settling parties probable liability. The DDT Defendants also complain that they know nothing about the negotiations that took place between the Plaintiffs and the settling Defendants; in particular, they have no information about the "allocation methodology" used by Plaintiffs to calculate the $12 million proposed figure. Finally, the DDT Defendants challenge the procedural fairness of the proposed settlement.

Second, Westinghouse, the non-settling PCBs Defendant, challenges the volumetric figures for PCBs discharges used by Plaintiffs in calculating the proposed settlement. However, Westinghouse's "objection" is not relevant to the present Motion for Entry of Proposed Consent Decree, because Westinghouse does not object to the $12 million proposed settlement, but merely complains about its own potential liability and possibilities for settlement.

Third, Cross–Defendant LACSD and various Third–Party Defendant cities, challenge the substantive fairness of the proposed settlement. These parties complain that pursuant to the proposed settlement, Potlatch and Simpson will be allowed to continue their actions (for contribution) against them.

### II. *Arguments In Support Of Entry Of Consent Decree*

In support of their Motion for Entry of Proposed Consent Decree, Plaintiffs contend that the proposed settlement is both procedurally and substantively fair. Plaintiffs maintain that the proposed settlement

---

1. PCBs Defendant Westinghouse Electric Corporation ("Westinghouse") is not a party to this settlement.

is procedurally fair because all negotiations were supervised by Special Master Peetris, who reported to the Court that all negotiations were at arms length.

They also argue that the proposed settlement is substantively fair because it is based on Plaintiffs' "reasonable assessment of litigation risk, the relative volumes of DDT and PCBs in the areas at issue, and the roles of the named defendants, including the volumes of DDT and PCBs discharged by each of the generators." *Exhibit "A" to Plaintiffs' Memorandum of Points & Authorities*, at p. 13. In calculating the proposed settlement, the Plaintiffs relied, in part, on the following volumetric figures:

  a. Potlatch/Simpson—4,500 pounds of PCBs discharged

  b. Westinghouse—38,000 pounds of PCBs discharged

  c. DDT Defendants—5,500,000 pounds of DDT discharged

*Plaintiffs' Points & Authorities*, at pp. 9–12. Based on these figures, Plaintiffs argue that the proposed settlement is fair to all parties.

### III. *Discussion*

■ Before approving a consent decree under CERCLA, the District Court must satisfy itself that the proposed settlement is fair, reasonable, and consistent with the purposes of CERCLA. H.R.Rep. No. 253, 99th Cong., 1st Sess. 19 (1985), *reprinted in* 1986 U.S.C.C.A.N., 2835, 3042; *United States v. State of Oregon*, 913 F.2d 576, 580 (9th Cir.1990), *cert. denied sub nom Makah Indian Tribe v. United States*, —— U.S. ——, 111 S.Ct. 2889, 115 L.Ed.2d 1054 (1991); *United States v. Seymour Recycling Corp.*, 554 F.Supp. 1334, 1337 (S.D.Ind.1982).

■ Reviewing the proposed settlement the District Court is now guided by the following factors: (1) the relative costs and benefits of litigating this case under CERCLA; (2) the risks of establishing liability on the part of the settlors; (3) the good faith efforts and adversarial relationship of the negotiators; (4) the reasonableness of the settlement as compared to the settlor's potential volumetric contribution; (5) the ability of the settlors to withstand a greater judgment; and (6) the effect of settlement on the public interest as expressed in CERCLA. *United States v. Rohm & Haas Company*, 721 F.Supp. 666, 687 (D.N.J. 1989).

■ One primary goal of CERCLA is to encourage early settlement. Additionally, "[i]n settlement negotiations, particularly in the early phases of environmental litigation, precise data relevant to determining the total extent of harm caused and the role of each PRP [potentially responsible party] is often unavailable." *U.S. v. Cannons Engineering Corp.*, 899 F.2d 79, 88 (1st Cir.1990). Accordingly, it would be contrary to CERCLA's overriding goal of achieving prompt settlement to require, prior to approval of the proposed settlement, precise information about the relative culpability of different defendants and the extent of the total harm caused. *Id.*

■ Furthermore, because of this goal, courts have given the Government's apportionment of liability great deference.[2] *Id.* Yet even so, the Court must still examine the adequacy of the settlement process. *Id.* at 87, n. 4. As stated by the First Circuit, "[t]o the extent that the process was fair and full of 'adversarial vigor,' the results come before the court with a much greater assurance of substantive fairness." *Id.* (citations omitted).

### a. PROCEDURAL FAIRNESS

■ On March 18, 1991 this Court was confronted by a proposed settlement in this lawsuit between Plaintiffs and Defendant LACSD. At that time, the Court expressed concern that the facts behind the proposed settlement were shrouded in mystery, stating "Let the light shine upon it, and we get all the facts...." In response to its concerns, the Court appointed Special Master

---

**2.** In *Cannons* the First Circuit stated: "As long as the data the EPA uses to apportion liability for purposes of a consent decree falls along the broad spectrum of plausible approximations, judicial intrusion is unwarranted...." 899 F.2d at 88.

Judge Peetris on March 18, 1991 to supervise all non-dispositive pretrial proceedings and to conduct and supervise settlement negotiations. He was appointed by the Court to be the light to shine upon the settlement negotiations.

Pursuant to the Court's order, Special Master Judge Peetris has been directly involved in all settlement activities. The Special Master held settlement conferences with each set of defendants and ordered that the substance of the discussions be kept confidential. However, the Special Master has submitted a report to the Court indicating that the proposed settlement is procedurally and substantively fair. The Special Master has assured the Court that all negotiations between Plaintiffs and settling Defendants Potlatch and Simpson were in good faith, between experienced counsel, adversarial in nature and held at arms length.

### b. SUBSTANTIVE FAIRNESS

The DDT Defendants challenge the substantive fairness of the proposed settlement figure. However, the $12 million proposed settlement figure appears to be reasonable and fair. Significantly, the figure was not arrived at in an arbitrary manner. The Plaintiffs have explained in detail the methodology that they used in arriving at this figure. In particular, they based this figure, in part, on their determination of the volumetric discharges by each group of Defendants. *See Supra.* This data was obtained from three sources: (1) LACSD technical reports and sampling data, (2) reports by various public agencies, and (3) information obtained from the Defendants.

The DDT Defendants object that the Plaintiffs calculations do not take into account the relative toxicity of PCBs as compared to DDT. However, the Government has determined that "the volume of DDT and PCBs discharged is more likely than toxicity to bear some reasonable relationship to contribution of each compound to restoration and replacement costs." *Plaintiffs Reply Memorandum,* at p. 16. So long as the method selected by the Government appears to be reasonable, the Court

should not interfere with the Government's determinations. *See Cannons Engineering,* 899 F.2d at 87.

Furthermore, the Courts have made it more than clear that proposed settlements should *not* be subjected to precision seeking line-item scrutiny. *See id.* at 87–88. In *Rohm & Haas* the Court observed,

> [W]here a money settlement is shown to bear a reasonable relation to some plausible estimate, or range of estimates, of the settling parties' volumetric contribution, CERCLA requires that such a settlement be accepted and entered as a consent decree.

*Rohm & Haas Co.,* 721 F.Supp. at 687.

### c. CONCLUSION

Accordingly, the Court rules that Plaintiffs' Motion for Entry of Proposed Consent Decree is GRANTED. The court has signed the proposed consent decree and ordered that it be entered by the Clerk of the Court.