UNITED STATES of America, and State of California, Plaintiffs,

v.

MONTROSE CHEMICAL CORPORATION OF CALIFORNIA, et al., Defendants.

and

Related Claims.

No. CV 90–3122 AAH (JRx).

United States District Court, C.D. California.

April 26, 1993.

Myles E. Flint, Acting Asst. Atty. Gen., Gerald F. George, Helen H. Kang, Environment and Natural Resources Div., U.S. Dept. of Justice, San Francisco, CA, Adam Kushner, Sharon Zamore, Environmental Enforcement Section Environment and Natural Resources Div., U.S. Dept. of Justice, Washington, DC, for U.S.

John A. Saurenman, Deputy Atty. Gen., Los Angeles, CA, for State of California.

Frank Rothman, Jose R. Allen, Peter Simshauser, Elizabeth P. Cowie, Skadden, Arps, Slate, Meagher & Flom, San Francisco, CA, for DDT Indus., defendants.

Paul Galvani, Ropes & Gray, Boston, MA, for ICI American Holdings, Inc., Rhone–Poulenc Basic Chemicals Co., Atkemix Thirty–Seven, Inc. Co., and Stauffer Management.

Moses Lasky, Charles B. Cohler, David M. Rosenberg–Wohl, William A. Logan, Lasky, Haas, Cohler & Munter, San Francisco, CA, for Westinghouse Elec. Corp.

B. Richard Marsh, Wesley G. Beverlin, Knapp, Marsh, Jones & Doran, Los Angeles, CA, Lloyd S. Guerci, Mayer Brown & Platt, Washington, DC, for LACSD and South Bay Cities Sanitation District.

Keith W. Pritsker, Deputy City Atty., Los Angeles, CA, for City of Los Angeles.

Rufus· C. Young, Jr., S. Paul Bruguera, Stephen R. Onstot, Jeffrey Kightlinger, Burke, Williams & Sorensen, Los Angeles, CA, for Cities of Alhambra, Azusa, Bell, Bellflower, City of Commerce, Downey, El Monte, El Segundo, Glendora, Hawaiian Gardens, Hawthorne, Irwindale, La Canada, Flintridge, Lomita, Lynwood, Manhattan Beach, Montebello, Paramount, Pasadena, Sierra Madre and Temple City.

Richard G. Montevideo, Rutan & Tucker, Costa Mesa, CA, for City of Baldwin Park, Lawndale, Signal Hill and West Covina.

Cary S. Reisman, Wallin, Kress, Reisman, Price & Dilkes, Santa Monica, CA, for Cities of Bell Gardens Bradbury, Huntington Park, La Verne Maywood, Rosemead, San Gabriel and Santa Fe Springs.

David P. Waife, Mitchell E. Abbott, Richards, Watson & Gershon, Los Angeles, CA, for Cities of Artesia, Carson, Compton, Cudahy, La Habra Heights, La Puente Monrovia, Norwalk, Rancho Palo Verdes, Rolling Hills, San Marino, South El Monte, and South Gate.

Roger W. Springer, City Atty., Oliver, Stoever, Barr & Vose, Los Angeles, CA, for

City of Covina Hermosa Beach and South Pasadena.

Christine Gosney, City Atty., Lynberg & Watkins, Los Angeles, CA, for City of Culver City.

Ronald T. Pohl, Asst. City Atty., Torrance, CA, for City of Torrance.

Joseph W. Fletcher, City Atty., Carolyn A. Barnes, Asst. City Atty., Burbank, CA, for City of Burbank.

David J. Prager, Los Angeles, CA, for County of Los Angeles.

Thomas L. Woodruff, Rourke & Woodruff, Orange, CA, for Cities of Anaheim, Brea, Buena Park, Cypress, Fountain Valley, Fullerton, Huntington Beach, Irvine, La Habra, La Habra Heights, La Palma, Los Alamitos, Newport Beach, Orange, Placentia, Santa Ana, Seal Beach, Stanton, Tustin, Villa Park, Yorba Linda, County Sanitation Dist. of Orange County, Costa Mesa Sanitation Dist., Garden Grove Sanitary Dist., Midway Sanitary Dist., Irving Ranch Water Dist., Los Alamitos County Water Dist. and Yorba Linda Water Dist.

Mary L. Walker, Stephen L. Marsh, Luce, Forward, Hamilton & Scripps, San Diego, CA, for Cities of Chino, Montclair and Upland and Liaison Counsel for Ontario, Fontana and Cucamonga County Water Dist.

Karl S. Lytz, Kimberly M. McCormick, Ronald R. Stuff, David Judson Barrett, Latham & Watkins, San Diego, CA, for Montrose Chemical Corp. of California.

## ORDER GRANTING PLAINTIFFS' MOTION FOR ENTRY OF SECOND CONSENT DECREE

HAUK, Senior District Judge.

### I. *FACTS AND BACKGROUND*

In this action, plaintiffs United States of America and the State of California ("Plaintiffs") seek entry of the second consent decree (the "Proposed Decree") resulting from the early settlement process that this Court established at its initial hearing in this matter on March 18, 1991. In early 1992, Plaintiffs lodged the first consent decree in this matter (the "Potlach Settlement"), which called for payment of $12 million by defendants Potlach Corporation and Simpson Paper Company. This Court granted entry of the Potlach Settlement on May 19, 1992.

The Proposed Decree now before the Court has been entered into by Plaintiffs and defendant County Sanitation District No. 2 of Los Angeles County ("LACSD") and certain third-party defendant local governmental entities ("Local Governmental Entities"). LACSD and the Local Governmental Entities are alleged to have owned or used sanitation systems and stormwater runoff systems that discharged wastewater to the ocean, or to have otherwise engaged in activities (such as mosquito abatement) which may have resulted in the discharge of hazardous substances such as DDT into the environment.

Plaintiffs had previously negotiated a proposed consent decree with LACSD and certain other sanitation districts in 1990. At that time, however, the Court expressed concern that the facts behind the proposed settlement remained unclear.[1] Plaintiffs subsequently withdrew this proposed consent decree at the request of LACSD to permit attempts to negotiate a settlement that would include a broader group of the Local Governmental Entities.

The Proposed Decree now before the Court is for $45.7 million. If this Court approves the Proposed Decree, LACSD and all 150 of the Local Governmental Entities will be removed from this action, greatly simplifying this litigation. The Proposed Decree calls for two substantial cash payments upon approval, one for $9.3 million for natural resource damages, and one for $3.5 million for response costs at the Montrose Chemical NPL Site ("Montrose Site").[2] Further payments totalling $33.6 million for natural resource damages would be made over

---

1. To remedy this, the Court appointed Special Master Harry V. Peetris on March 18, 1991 to supervise all non-dispositive pretrial proceedings and to conduct and supervise settlement negotiations.

2. The Montrose Chemical NPL Site is defined at paragraph 6.F of the Proposed Decree.

the next four years. Solely at the discretion of Plaintiffs, up to $8.0 million of that money could be provided in the form of in-kind services. The Local Governmental Entities would also release any claims for natural resource damages or for response costs associated with the Montrose Site.

In return, the Local Governmental Entities would receive covenants not to sue for both claims asserted by Plaintiffs in this matter. Under the Proposed Decree, the Local Governmental Entities could not be sued in relation to either the Plaintiffs' natural resource damage claim, or the United State's claim for response costs associated with the Montrose Site. The covenants not to sue are subject to limited "reopener" provisions, which would permit Plaintiffs to seek additional natural resource or response costs damages to the extent that such claims were based on new information or unknown conditions. In addition, the natural resource trustees (the "Trustees") are given discretion under the Proposed Decree to decide how to allocate the damages. Under the terms of the Proposed Decree, however, the Trustees would exercise their discretion in compliance with the provisions of CERCLA.

As with the Potlach Settlement, there is opposition to entry of the Proposed Decree from the non-settling defendants, Montrose Chemical Corporation of California, et al. (the "DDT Defendants") and Westinghouse Electric Corporation ("Westinghouse").

## II. *NON–SETTLING DEFENDANTS' OBJECTIONS TO CONSENT DECREE*

The DDT Defendants and Westinghouse challenge both the substantive and procedural fairness of the proposed settlement. Their objections are focused on five areas: 1) the proper role of this Court; 2) Plaintiffs' rationale for settlement; 3) the adequacy of the factual record; 4) the Proposed Decree's consistency with CERCLA; and 5) the Proposed Decree's limitation on additional damages resulting from implementation of secondary treatment.

### A. Role of the Court

The DDT Defendants question the amount of deference this Court should give to Plaintiffs' evaluation of the facts and rationale for settlement. In its approval of the Potlach Settlement, this Court gave Plaintiffs' apportionment of liability great deference in the interest of early settlement. *United States v. Montrose Chem. Corp. of Cal.,* 793 F.Supp. 237, 240 (C.D.Cal.1992).

In addition, Westinghouse questions the amount of deference this Court should give Special Master Peetris' recommendation (the "Recommendation"). As with the Potlach Settlement, the Special Master has recommended that this Court grant Plaintiffs' motion to enter the Proposed Decree.

### B. Plaintiffs' Rationale for Settlement

The DDT Defendants and Westinghouse question the Plaintiffs' rationale for settlement, which took into account a variety of factors, with volumetric contribution the major factor for the industrial defendants. With regard to LACSD and the Local Governmental Entities, Plaintiffs took into consideration (1) the risks and costs of litigation; (2) the involvement of LACSD in early efforts to control the discharge of DDT and PCBs; (3) the public service nature of the settling parties' sewer collection; and (4) the fact that LACSD and the Local Governmental Entities were willing to engage in early settlement negotiations.

### C. The Adequacy of the Factual Record

In questioning the adequacy of the factual record, the DDT Defendants and Westinghouse argue two points. First, they argue that the Proposed Decree's provision for contribution protection to the settling defendants should make the Proposed Decree subject to greater scrutiny by this Court with respect to the facts of the litigation.

Second, they claim that the facts supporting the Plaintiffs' rationale for settlement are absent or unreliable or wrong. In support of this argument, the non-settling defendants first argue that *New York v. SCA Services, Inc.,* 1993 WL 59407 (S.D.N.Y.1993) represents a new trend in natural resource damages cases and provides a basis for this Court to depart from the approach it took

when it approved the Potlach Settlement. *SCA,* however, is distinguishable from this case, since the settlors there were responsible for 90 percent of the contaminant damage, yet were only required to pay a sum equal to about one-third of the response costs. The Court's approval of the Proposed Decree here would not result in such a manifestly unjust outcome. In addition, the DDT Defendants and Westinghouse assert that Plaintiffs lack sufficient information regarding the discharge of hazardous substances by the settling parties. In support of their factual analysis, Plaintiffs cite interviews with representatives of the settling parties, conducted under the supervision of the Special Master, as well as public records.

Further, the DDT Defendants assert that Plaintiffs' estimates of DDT discharge from the Montrose Site are erroneous, and that there are numerous other sources of the DDT contamination. This argument was also unsuccessfully raised in opposition to the Potlach Settlement. Plaintiffs contend that the DDT Defendants' claims regarding "actual" DDT discharge are still imprecise and unsubstantiated. Finally, Westinghouse complains it has had difficulty scheduling depositions of its former employees. Plaintiffs respond, however, that there is no reason to believe that these witnesses will be determinative of the practices employed by Westinghouse at its facility.

### D. Consistency with CERCLA: Settlement Funds and Response Costs

The DDT Defendants argue that the Proposed Decree is inconsistent with CERCLA in two respects: 1) the provision for the use of settlement funds violates CERCLA; and 2) CERCLA bars a certain geographic area on the Montrose site from inclusion within the scope of the covenant not to sue for natural resource damages.

### 1. Settlement Funds

The DDT Defendants assert that the Proposed Decree expands the Trustees' authority and discretion to allocate the settlement funds beyond what they can properly do under CERCLA. The DDT Defendants raised this argument unsuccessfully against the Potlach Settlement. The language of the Proposed Decree specifies that the Trustee's discretion must be exercised in accordance with the provisions of CERCLA.

### 2. Response Costs

The non-settling parties further assert that with respect to one area of the Montrose Site, namely the stormwater pathway from the site to its ocean outlet ("Stormwater Pathway"), there may be a bar as to the suit at this time for any residual resource damages associated with that particular area of the site. The non-settling parties suggest that this Court should reject the Proposed Decree due to this potential bar to the suit.

The Stormwater Pathway is an overlapping geographic area. That is, it is a subject of both the Plaintiffs' natural resource damage claim and the claim for response costs incurred with respect to the Montrose Site. Section 113(g)(1) of CERCLA bars the filing of an action with respect to a facility listed on the National Priorities List prior to the selection of a remedial action at that facility. 42 U.S.C. § 9613(g)(1). Because the Montrose Site is such a facility, and because no remedial action has yet been selected at the Montrose Site, this restriction may apply to the Stormwater Pathway. Thus, this prerequisite may potentially bar suit at this time for any residual damages associated with the Stormwater Pathway. Of course, the bar would not preclude the suit forever, but simply until there was a remedial action selected for the Montrose Site. Plaintiffs correctly point out, however, that nothing precludes the parties from settling claims even when they are potential claims.

### E. Limitation on Additional Damages Resulting from Implementation of Secondary Treatment

The DDT defendants object to a provision in the Proposed Decree which limits the ability of Plaintiffs to seek further recovery from the Local Governmental Entities for natural resource damages that might arise from future release of hazardous substances. That limitation applies, however, only to the extent that the Local Governmental Entities can

demonstrate that the contaminant releases result from the institution of full secondary treatment of the wastewater flowing through a sole outlet, namely the White's Point Outfall. This limitation may put the non-settling defendants at some additional risk if the non-settlors are jointly and severally liable for the damages. Plaintiffs correctly argue, however, that this is a litigation risk inherent in the DDT Defendants' decision not participating in early settlement.

## III. *DISCUSSION*

■ Before initially approving a the Proposed Decree in accordance with CERCLA, this Court must satisfy itself that the settlement is fair, reasonable, and consistent with the purposes of CERCLA. *Montrose*, 793 F.Supp. at 240 (citations omitted). In reviewing the Proposed Decree, the Court is guided by the following factors: (1) the relative costs and benefits of litigating this case under CERCLA; (2) the risks of establishing liability on the part of the settlors; (3) the good faith efforts and adversarial relationship of the negotiators; (4) the reasonableness of the settlement as compared to the settlor's potential volumetric contribution; (5) the ability of the settlors to withstand a greater judgement; and (6) the effect of settlement on the public interest as expressed in CERCLA. *Id.* at 240 (citing *United States v. Rohm & Haas Company*, 721 F.Supp. 666, 687 (D.N.J.1989).

■ This Court must also consider CERCLA's primary goal to encourage early settlement. It would be contrary to this goal to require, prior to approval of the Proposed Decree, precise information about the relative culpability of different defendants and the extent of the total harm caused. *Id.* (citing *United States v. Cannons Engineering*, 899 F.2d 79, 88 (1st Cir.1990)). Furthermore, because of this goal, courts have given the government's apportionment of liability great deference. *Id.* In spite of these considerations, however, the Court must still scrutinize the adequacy of the settlement process. In order to grant Plaintiffs' motion to enter the Proposed Decree, this Court must find the Proposed Decree to be both (1) the product of a procedurally fair process;

and (2) substantively fair to the various parties in light of a reasonable reading of the facts in this case.

## A. Procedural Fairness

■ Pursuant to the Court's order, Special Master Peetris has been directly involved in all settlement activities. The Special Master held settlement conferences with each set of defendants and ordered that the substance of the discussions be kept confidential. The Special Master has submitted his Recommendation to the Court indicating; and conclusively showing, that negotiations between Plaintiffs, LACSD and the Local Governmental Entities were made in good faith, and that the Proposed Decree is procedurally and substantively fair. Furthermore, the Special Master has assured the Court that all negotiations were between experienced counsel, adversarial in nature and held at arms length.

## B. Substantive Fairness

■ As already discussed above, the DDT Defendants challenge the substantive fairness of the Proposed Decree. The $45.7 million proposed settlement figure, however, appears to be reasonable and fair. Significantly, the figure was not arrived at in an arbitrary manner. The Plaintiffs have explained in detail the methodology that they used in arriving at this figure. So long as the method selected by the Government appears to be reasonable, the Court should not interfere with the Governments determinations, particularly when buttressed by the Recommendation of the Special Master. *Id.* at 241 (citing *Cannons Engineering*, 899 F.2d at 87). Furthermore, the Courts have made it more than clear that proposed settlements should *not* be subjected to precision-seeking, nit-picking line-item scrutiny. *Id.* (citing *United States v. Rohm & Haas Co.*, 721 F.Supp. 666, 687 (D.N.J.1989)).

## IV. *CONCLUSION*

The Court, following the Recommendation of the Special Master, finds and concludes that the process of settlement and the settlement itself were and are fair and reasonable.

Based on this finding, the Court makes the following:

### ORDER

Plaintiffs' Motion for Entry of Proposed Consent Decree is **GRANTED.**