**UNITED STATES of America**

v.

**ATLAS MINERALS AND CHEMICALS, INC., et al.**

v.

**R. Emory MABRY, et al.**

**Civ. A. No. 91–5118.**

United States District Court,
E.D. Pennsylvania.

March 1, 1994.

---

Nancy Flickinger, Dept. of Justice, Environmental Enforcement Section, Barry M. Hartman, U.S. Dept. of Justice, Environmental & Natural Resources Div., Washington, DC, Virginia R. Powel, Wendy A. Miller, David A. Garrison, U.S. Attorney's Office, Philadelphia, PA, Robin L. Juni, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, Dean Jerrehian, Office of the U.S. Atty., Philadelphia, PA, and Anna L. Wolgast, Department of Justice, Washington, DC, for the U.S.

Fredric C. Jacobs, Easton, PA, for Atlas Minerals and Chemicals, Inc.

David G. Mandelbaum, Jeanne J. Dworetzky, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA and Robert Moore, Lexington, MA, for Caloric Corp.

Franklin Kury and Robert B. Hoffman, Reed, Smith, Shaw & McClay, Harrisburg, PA, for East Penn. Mfg. Co., Inc.

Richard L. Guido, New York City and John W. Ubinger, Jr., Jones, Day, Reavis & Pogue, Pittsburgh, PA, for Exide Corp.

Robert Brett Dunham, Rodney B. Griffith, Richard O. Avery, David G. Battis, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, Barry S. Neuman, Arti K. Rai and Maureen F. Del Duca, Jenner & Block, Washington, DC, for GAF Corp.

Mark M. Wilcox, Peter S. Paine, III, and Bonnie Allyn Barnett, Drinker, Biddle & Reath, Philadelphia, PA, for Garden State Tanning, Inc.

Kenneth J. Warren, Steven T. Miano, Deane H. Bartlett, Marc L. Frohman and Jill

M. Hyman, Manko, Gold & Katcher, Bala Cynwyd, PA, for Gen. Elec. Co.

Peter S. Paine, III and Bonnie Allyn Barnett, Drinker, Biddle & Reath, Philadelphia, PA, for the Glidden Co.

Charles B. Casper and Sally Ackerman King, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, and C. Deforrest Trexler, Allentown, PA, for Mack Trucks, Inc.

Diane Bissell Carley, John H. Dudley, Jr., and Susan Carino Nystrom, Butzel, Long, Gust, Klein & Van Zile, Detroit, MI, for the Stroh Brewery Co.

Janet E. Arnold, pro se.

Donald P. Russo, Allentown, PA, for Electro–Space Fabricators, Inc.

Jeffrey S. Saltz, Jennifer L. Haltzman, and Christopher R. Booth, Jr., Wolf, Block, Schorr and Solis–Cohen, Philadelphia, PA, for Kleinert's, Inc.

Bonnie Allyn Barnett, Philadelphia, PA, for the Glidden Co.

Francis P. Burianek, Asst. City Sol., Office of the City Sol., Allentown, PA, for City of Allentown.

John R. Embick, Kittredge, Donley, Elson, Fullem and Embick, Philadelphia, PA, for Borough of Kutztown.

Daniel P. Carter, Timby, Brown & Timby, Philadelphia, PA, Borough of Macungie, Carol J. Steffy, Borough Manager, Macungie, PA and Leah C. Healey, Maraziti, Falcon & Gregory, Morristown, NJ, for Borough of Macungie.

Charles J. Fonzone, Fonzone & Ashley, Allentown, PA and Daniel P. Carter, Timby, Brown & Timby, Philadelphia, PA, for Borough of Emmaus.

David G. Knerr and Thomas A. Capehart, Weaver, Mosebach, Piosa, Hixson & Marles, Allentown, PA, for Borough of Alburtis.

Jeffrey R. Dimmich and Thomas H. Dinkelacker, Snyder, Dimmich & Guldin, P.C., Allentown, PA, for Borough of Catasaqua.

John D. Lychak, Gross, McGinley, Labarre, & Eaton, Allentown, PA, for Electro–Chemical Engineering & Mfg. Co.

Michael R. Dillon and Susan Saint–Antoine, Morgan, Lewis, & Bockius, Philadelphia, PA, for Olin Corp. and Carolina Freight Carriers Corp.

David J. Parsells, Mitchell S. Berger, LaBrum and Doak, Philadelphia, PA, for A–Treat Bottling Co.

Thomas C. Branca, Stewart, Wood & Branca, Norristown, PA, for Robert J. McAuliffe.

Patricia A. Shaw, Eckert, Seamans, Cherin & Mellott, Pittsburgh, PA, for SAAB Metals Corp.

Antoinette R. Stone and Raymond McGarry, Buchanan Ingersoll, P.C., Philadelphia, PA, for SCA Services of Pennsylvania, Inc.

Aria A. Klees, Lawrence W. Diamond and Stephanie B. Rubino, Hannoch Weisman, P.C., Roseland, NJ, for Stanley Vidmar, Inc.

William I. Cowin, Friedman and Atherton, Boston, MA, for Saucony Shoe Mfg. Co., Inc.

Albert A. De Gennaro, Harleysville, PA, for Solid Waste Service, Inc.

Clare Marie Diemer, Cohen, Shapiro, Polisher, Shiekman & Cohen and John P. Judge, Eckert, Seamans, Cherin & Mellott, Philadelphia, PA, for Air Products and Chemicals, Inc.

Geoffrey L. Beauchamp, Roberta L. Binder, Wisler, Pearlstine, Talone, Craig, Garrity & Potash, Blue Bell, PA, and Frank A. Baker, III and Robert Margolis, Margolis, Smith, Baker & Schoff, P.C., Bethlehem, PA, for Allentown Brake and Wheel Service, Inc.

Mark C. Van Horn and David A. Eisenberg, Eisenberg & Van Horn, Allentown, PA, for Barclay Contracting Co.

Kenneth N. Klass, Blank, Rome, Comisky & McCauley and Susan Saint–Antoine, Morgan, Lewis, & Bockius, Philadelphia, PA, and John A. Andreasen, McGrath, North, Mullin & Kratz, P.C., Omaha, NE, for Beatrice Companies, Inc.

Douglas A. Crockett, Joseph J. McGovern, Obermayer, Rebmann, Maxwell & Hippel, and Catherine C. Pyune, Philadelphia, PA, for Carl R. Bieber, Inc.

David J. Parsells, Philadelphia, PA, for Bethlehem Suburban Motor Sales, Inc. t/a Bethlehem Suburban Ford.

Robert C. McFadden, McFadden & Knauer, Allentown, PA, for William F. Deibert, Inc. and McAuliffe Asphalt Paving, Inc.

Douglas A. Crockett, Obermayer, Rebmann, Maxwell & Hippel and Catherine C. Pyune, Philadelphia, PA, for C.R. Fegley & Son Signs and Schwoyer's Painting and Paper Hanging.

Charles J. Hair, Hair & Jordan, Allentown, PA, for Frey's Service Station.

Donald P. Russo, Allentown, PA, for Kehs Garage.

Patricia A. Bill, LaBrum and Doak and Gretchen W. Anderson, Clark, Ladner, Fortenbaugh & Young, Philadelphia, PA, for Kutztown Pub. Co., Inc.

Margaret A. Hill, Winston & Strawn, Washington, DC and Michael G. Wolfe, Metropolitan Edison Co., Reading, PA, for Metropolitan Edison Co.

John J. Dugan, Timby, Brown & Timby and John C. McNamara, Butler & McNamara, P.C., Philadelphia, PA, for Persing Auto Body & Mechanical Repair Shop Inc.

Kenneth S. Cooper, Philadelphia, PA, for TBA Auto Parts, Inc.

John D. Lychak, Gross, McGinley, Labarre, & Eaton, Allentown, PA, for Wheel & Crawler Equipment Co., Inc.

John N. Moore, Squire, Sanders & Dempsey, Washington, DC, for White Consol. Industries, Inc.

Seth V.D.H. Cooley, Deborah Tate Pecci, Duane, Morris & Heckscher, Philadelphia, PA and Wallace B. Eldridge, III, Duane, Morris & Heckscher, Allentown, PA, for Clifford R. Hill.

Thomas C. Branca, Stewart, Wood & Branca, Norristown, PA and C. Deforrest Trexler, Allentown, PA, for Edward Reeser.

Ash Sudhakar, Environmental Law Group, P.C., Reading, PA, for Daily Trash Collection, and its Partners, Ray and Charles Yoachim.

Arnold S. Block, Stradley, Ronon, Stevens & Young, Philadelphia, PA, for Allentown Paint Mfg. Co., Inc.

J. Bradford McIlvain, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, PA, H. Fred Northcraft, Robert J. Vincze, and Mark A. Wilkerson, Smith, Gill, Fisher & Butts, Kansas City, MO, for American Marketing Industries, Inc.

Catherine C. Pyune, Philadelphia, PA, for Dent Mfg., Inc. and Diamond Industries, Inc. t/a Altemos Fuel Oil Co.

Bart M. Beier, Miller & Beier, Pittsburgh, PA, for Garnet Electroplating Corp.

John F. Stoviak, Joan A. Johnson, Neil Robert Bigioni, Alan V. Klein, Saul, Ewing, Remick & Saul and Carl B. Everett, Saul, Ewing, Remick & Saul, Philadelphia, PA, for W.R. Grace & Co.–Conn. (Inc.)

Donald L. VanGilder, Thompson, Somach & Vangilder, Allentown, PA, for Knopf Automotive, Inc. t/a Knopf Pontiac.

Herman J. Soloway, New York City, for Kutztown Shoe, Inc.

Patricia A. Shaw, Eckert, Seamans, Cherin & Mellott, Pittsburgh, PA, for Lehigh Valley Hosp. t/a Allentown Hosp.

Thomas C. De Lorenzo, Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, PA, for Sacred Heart Hosp. of Allentown, (Inc.)

Bernard A. Labuskes, Jr., McNees, Wallace & Nurick, Harrisburg, PA, for Scott Chevrolet, Inc. and J.D. Snyder Co., Inc. t/a Circle's Auto Parts.

John Patrick Kelley, Kelley, Jasons, McGuire & Spinelli, Philadelphia, PA, for Square D Co., (Inc.)

Mark O. Denehy, Adler, Pollock & Sheehan, Inc., Providence, RI, for Texapol Corp.

James W. Abraham, Harrisburg, PA, for Tyler Pipe Industries (Penn Div.), Inc.

Jennifer L. Berke, Kathy Dales, and R. Thomas McLaughlin, Kelly McLaughlin & Foster, Philadelphia, PA, for Armstrong World Industries, Inc.

Susan E. Schwab, Rhoads & Sinon, Harrisburg, PA, for Eastern Industries, Inc.

Richard H. Friedman, Buchanan Ingersoll P.C., Harrisburg, PA, for Kutztown University (Inc.)

James W. Abraham, Harrisburg, PA, for Tyler Pipe Industries (Penn Div.), Inc.

## OPINION

CAHN, Chief Judge.

This is a cost recovery action brought by the United States (the "government" or "United States") pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 *et seq*. The government has identified and sued ten potentially responsible parties ("PRPs" or "defendants") for costs allegedly incurred in cleaning up a landfill. The PRPs and the government have reached a settlement of this dispute and have embodied their settlement in a consent decree. Currently before the court is the United States' Motion to Enter the Consent Decree. For the reasons set forth below, the Motion is granted.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Site History

This case arises out of contamination of the Dorney Road Landfill ("the site") in Upper Macungie Township, Berks County, Pennsylvania. Prior to its use as a landfill, the site was operated as an open-pit iron ore mine. From about 1952 through 1978, the pit and perimeter area were used as a dump for a variety of municipal and industrial wastes. The site was abandoned in 1978 and was never properly capped or closed.

In 1980, the Environmental Protection Agency ("EPA") conducted ground water and soil leachate tests at the site and determined that various organic and inorganic contaminants were present. The EPA, in conjunction with the Pennsylvania Department of Environmental Resources ("PaDER"), continued to monitor the site through 1986.

Having determined that the site conditions presented a substantial threat to human health, EPA initiated a Superfund-financed emergency removal action at the site to address immediate and pressing environmental hazards. This removal action involved regrading of the site and the construction of on-site ponds to collect surface water run-off. From Fall, 1987, through Spring, 1998, EPA and PaDER conducted a Remedial Investigation and Feasibility Study ("RI/FS") at the site to evaluate long-term remedial alternatives. The EPA determined that long-term response was best addressed by dividing the site into two "Operable Units"—one which addressed landfill waste and soil contamination ("OU1") and one which addressed ground water concerns ("OU2"). In Fall, 1988, EPA issued a Record of Decision for each of the Operable Units ("ROD–OU1" and "ROD–OU2"). The RODs address in detail the hazardous substances present at the site and the corresponding threats to human health and the environment. The RODs also evaluate the potential effectiveness of various long-term response alternatives and select what the EPA has determined to be the best permanent remedy for the site.

EPA's response to the site has been twofold. First, as noted above, the EPA performed an initial emergency removal action at the site. Second, the EPA issued four unilateral administrative orders to the ten PRPs pursuant to § 106 of CERCLA, 42 U.S.C. § 9606 (the "unilateral orders"). The unilateral orders require the PRPs to, among other things, implement at their own cost the permanent CERCLA remedies selected by EPA in the two RODs. The government states that the PRPs are currently in compliance with the § 106 orders.

### B. History of this Litigation

In August, 1991, the United States filed a CERCLA cost recovery action against the PRPs pursuant to 42 U.S.C. § 9607 and requested a declaratory judgment for future costs pursuant to 42 U.S.C. § 9613(g). The defendants in turn filed third-party complaints for contribution against approximately 60 third-party defendants. The third-party contribution action, which does not directly bear on the issues presented by the instant motion, is currently being tried before the court.

On December 24, 1992, just before the scheduled trial of the United States' claims against the PRPs, the United States and the PRPs reached the settlement agreement embodied in the consent decree. The agreement provides that the PRPs will reimburse the United States for $1,209,250 in past response costs incurred by the government. The PRPs further agree to reimburse the government for any future oversight costs that EPA might incur in overseeing the PRPs' privately funded response actions. Also, in the event that EPA reimburses PaDER for costs incurred by PaDER, the PRPs have promised to contribute up to $70,750 for that reimbursement. In exchange for the PRP payments and promises to pay, the United States dismisses without prejudice its claims against the PRPs and covenants not to sue the PRPs for other costs incurred at the site. In addition, the settling PRPs will receive immunity from contribution claims by non-parties to the decree.

The United States lodged the consent decree with the court on April 13, 1993, and, pursuant to 42 U.S.C. § 9622(d)(2) and 28 C.F.R. § 50.7, the decree was subject to a period of public comment that ended May 24, 1993. The Department of Justice ("DoJ") received comments from three groups of third-party defendants ("commenters"). After considering the comments and responding to them, EPA determined that the commenters did not raise objections to the decree sufficient to block its entry. The United States filed the instant Motion to Enter the Consent Decree on August 3, 1993. The commenters have filed their objections to entry of the decree.

On August 12, 1993, the United States Court of Appeals for the Third Circuit issued its opinion in *United States v. Rohm and Haas Co.*, 2 F.3d 1265, *reh'g denied and reh'g en banc denied*, 1993 U.S.App. LEXIS 27769 (3d Cir. Oct. 22, 1993). In *Rohm and Haas*, the Court of Appeals held that certain costs of overseeing private response actions are not recoverable as a cost of removal under CERCLA § 107. By an Order entered on September 23, 1993, the court granted the PRPs' request for leave to brief the court on whether, in light of *Rohm and*

*Haas*, this court should approve and enter the decree. On October 8, 1993, the PRPs filed a Motion to Modify or Withdraw from the Proposed Consent Decree, arguing that the *Rohm and Haas* decision justifies modification of the decree, or alternatively denial of the motion to enter the decree, to reflect the government's alleged lack of authority under CERCLA to recover certain oversight costs. The United States filed a responsive brief on October 22, 1993, and this court held a hearing on January 10, 1994, in which the United States, the PRPs, and the commenters had an opportunity to be heard on the cross-motions and objections.

## II. LEGAL FRAMEWORK

### a. Statutory Authority in CERCLA

Section 104 of CERCLA authorizes the President, on behalf of the United States, to select and implement responses to releases and threatened releases of hazardous substances into the environment. 42 U.S.C. §§ 9604(a), 9604(a)(4). Although the government may fashion a response in a number of ways, CERCLA provides two general response options. First, the United States may formulate and implement a response paid for out of the "Superfund," a trust funded by Congressional appropriations for responding to environmental hazardous wastes. *See* 42 U.S.C. §§ 9604, 9611. In a Superfund-financed response, the United States may sue PRPs to recover the incurred costs of response and thereby refresh the Superfund. 42 U.S.C. § 9607. Second, the EPA may fashion a response but order PRPs to implement it at the PRPs' cost. 42 U.S.C. § 9606. In cases where the EPA orders private response, the EPA may nonetheless recoup funds spent in evaluating the site and fashioning a response. 42 U.S.C. § 9606.

The EPA's response in this case was a hybrid. The EPA addressed immediate concerns through an initial removal action, for which the United States now seeks reimbursement. The permanent remedy selected for the site is embodied in the four unilateral orders, which direct the PRPs to clean up the site at their cost, subject to EPA oversight. The orders are self-executing and the court is empowered to fine the PRPs for

failure to comply with them. 42 U.S.C. § 9606.

In addition to providing the government with a civil cause of action for recovery of incurred response costs, CERCLA also authorizes the President to enter into consent decrees to facilitate response. Section 122 of CERCLA provides:

The President, in his discretion, may enter into an agreement with any person ... to perform any response action ... if the President determines that such action will be done properly by such person. Whenever practicable and in the public interest, as determined by the President, the President shall act to facilitate agreements under this section that are in the public interest and consistent with the National Contingency Plan in order to expedite effective remedial actions and minimize litigation.

42 U.S.C. § 9622(a). In order to encourage settlement and the expeditious cleanup of Superfund sites, Congress has authorized the President, in his discretion, to give as consideration a covenant not to sue PRPs who settle with the United States. 42 U.S.C. § 9622(f). Such a covenant is included in the consent decree in this case. Moreover, CERCLA provides settling PRPs with immunity from contribution claims arising out the site. However, the government has reserved its right to resume litigation in the event that the PRPs default on their obligations under the decree.

b. *Legal Standard for Consent Decrees*

■ Although entry of a consent decree is committed to the informed discretion of the trial court, strong policy considerations favor entry. *United States v. Akzo Coatings of Am.,* 949 F.2d 1409, 1423–24 (6th Cir. 1991); *United States v. Cannons Engineering Corp.,* 899 F.2d 79, 84 (1st Cir.1990); *United States v. Alcan Aluminum, Inc.,* No. 88–4970, 1993 WL 232194, at *2–3, 1993 U.S.Dist. LEXIS 9043, at *11–13 (E.D.Pa. June 24, 1993) (Troutman, J.); *United States v. Nicolet, Inc.,* No. 85–3060, 1989 WL 95555, at *3, 1989 U.S.Dist. LEXIS 9576, at *8 (E.D.Pa. Aug. 15, 1989) (Broderick, J.). Resolution of litigation by voluntary settlement is favored because the parties and the public avoid the time and expense of taking the case to trial. *Pennwalt Corp. v. Plough Inc.,* 676 F.2d 77, 80 (3d Cir.1982). This policy is particularly strong where the government has brought suit to obtain compliance with the law and determines that settlement of dispute by consent decree is in the public interest. *Cannons,* 899 F.2d at 84.

■ Accordingly, this court's review of the decree is highly deferential. "The balance of the competing interests must initially be left to the discretion of the Attorney General when the United States brings the action, especially when the Justice Department negotiated the consent decree on behalf of an agency specially expert in the field." *Alcan,* 1993 WL 232194 at *3, 1993 U.S.Dist. LEXIS 9043 at *11–12 (citing *Akzo,* 949 F.2d at 1436). This court cannot second-guess the wisdom of the parties' decisions and should preserve their bargained-for positions whenever possible. *Nicolet,* 1989 WL 95555, at *2, 1989 U.S.Dist. 9576, at *6. Therefore, the court cannot modify the proposed decree for the parties—it can only approve or reject it. *Id.* at *3, at *8. The ultimate determination for the reviewing court is whether the decree is "reasonable, fair and consistent with the purposes that CERCLA is intended to serve." H.R.Rep. No. 253, Part 3, 99th Cong., 1st Sess. 19 (1985), *reprinted in,* 1986 U.S.C.C.A.N. 2835, 3038, 3042. *Akzo,* 949 F.2d at 1424; *Cannons,* 899 F.2d at 85; *Alcan,* 1993 WL 232194, at *3, 1993 U.S.Dist. 9043, at *12.

■ Although the court's review is deferential, it cannot merely "rubber stamp" the decree. A consent decree is more than a contract between the parties—it is a judicial act. *United States v. Swift & Co.,* 286 U.S. 106, 115, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932); *Nicolet,* 1989 WL 95555, *2–3, 1989 U.S.Dist. LEXIS 9576, *7–8. Accordingly, before the court places its imprimatur on the agreement of the parties, it must examine the agreement for legality. *League of United Latin Am. Citizens v. Clements,* 999 F.2d 831, 845 (5th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 878, 127 L.Ed.2d 74 (1994); *Nicolet,* 1989 WL 95555, *2–3, 1989 U.S.Dist. LEXIS 9576, *7–8. The Court of Appeals

for the Fifth Circuit has described this inquiry:

> Because the consent decree does not merely validate a compromise but, by virtue of its injunctive provisions, reaches into the future and has continuing effect, its terms require more careful scrutiny. Even when it affects only the parties, the court should, therefore, examine it carefully to ascertain not only that it is a fair settlement but also that it does not put the court's sanction on and power behind a decree that violates Constitution, statute, or jurisprudence.... If the decree also affects third parties, the court must be satisfied that the effect on them is neither unreasonable nor proscribed.

*United States v. City of Miami,* 664 F.2d 435, 440 (5th Cir.1981) (en banc) (Rubin, J.). The court therefore must be mindful of the legal limits on both its own power to resolve cases and the government's authority to settle cases.

## III. DISCUSSION

■ Although the entry of CERCLA consent decrees is not new to this court, *see Alcan,* 1993 WL 232194, 1993 U.S.Dist. LEXIS 9043; *Nicolet,* 1989 WL 95555, 1989 U.S.Dist. LEXIS 9576, the instant motion is unique because parties to the consent decree now challenge its entry. As an initial matter, the court notes that the decree's signatories have agreed not to challenge entry of the decree. Consent Decree at ¶ I.B. While the parties concede and the court recognizes that the parties are bound by this clause of the decree, the court agrees with the PRPs that the Court of Appeals' decision in *Rohm and Haas* raises serious issues that must be considered carefully prior to entry of the decree.

### A.

Before the court addresses the objections to entry of the decree, a discussion of the *Rohm and Haas* decision is necessary to an understanding of the PRPs' arguments. In *Rohm and Haas,* the government sought recovery of the past and future costs of overseeing a privately funded cleanup of a contaminated landfill in Bristol Township, Pennsylvania. *United States v. Rohm and Haas Co.,* 2 F.3d 1265 (3d Cir.1993). The EPA originally proposed to place the site on the National Priorities List, and drafted a consent order for private cleanup pursuant to CERCLA § 106. *Id.* at 1268. Rohm and Haas Co. ("R & H"), however, persuaded EPA to manage the private response under the Resource Conservation and Recovery Act ("RCRA") rather than under CERCLA. After R & H began its cleanup efforts, the United States brought a cost recovery action pursuant to CERCLA § 107, 42 U.S.C. § 9607. The district court entered a judgment for the United States that included an award of the government's claim for oversight costs. R & H appealed the judgment, arguing that the oversight costs incurred by the government were not recoverable under CERCLA. The Court of Appeals for the Third Circuit agreed and reversed the judgment of the district court. *Id.* at 1278.

As the Court of Appeals noted, CERCLA's cost recovery scheme contemplates two types of response actions—"removal" actions and "remedial" actions. "In general, removal actions are short term responses to a release or threat of release while remedial actions involve long term remedies. The statute defines both with specificity." *Id.* at 1271. The government argues in the instant case "that the Third Circuit *never* analyzed whether oversight costs are compensable under the CERCLA definition of 'remedy' or 'remedial action'" under 42 U.S.C. § 9601(24).[1] Rather, the government argues, *Rohm and Haas* is most properly read only for the proposition that oversight costs are not a compensable cost of *removal,* and that the oversight costs at issue here are recoverable as a "remedial" cost.

This court agrees that, read narrowly, the Court of Appeals' holding is limited to whether the oversight costs at issue were recovera-

---

**1.** The United States also argues that *Rohm and Haas* is wrongly decided. Of course, opinions of the Court of Appeals for the Third Circuit are a source of mandatory authority in this judicial district and this argument is better addressed to the United States Supreme Court. According to counsel for the government, the United States has declined to file a Petition for Writ of Certiorari in *Rohm and Haas.*

ble as "costs of removal" under 42 U.S.C. § 9607(a)(4)(A) and § 9601(23). *See Rohm and Haas*, 2 F.3d at 1271, 1274–76. Therefore, it is clear that if the oversight costs in this case are recoverable at all, it must be because they are remedial costs under CERCLA § 9601(24) rather than costs of removal under § 9601(23).

■ This court finds that the costs at issue here are more properly characterized as "remedial" (as opposed to "removal") in nature. The oversight in this case is directly attributable to the PRPs' implementation of the EPA-selected permanent remedy at the site and, as such, is more akin to a long-term remedy than a short-term removal action. *Rohm and Haas*, 2 F.3d at 1271. Insofar as the Court of Appeals limits its holding to whether oversight costs are recoverable as a cost of "removal," *Rohm and Haas* is at least facially distinguishable from the case at bar. This court's observation that the instant costs are "remedial" in nature does not, however, mean that the costs are necessarily recoverable. Although the result in *Rohm and Haas* is distinguishable, the Court of Appeals' analysis is directly applicable.

In determining whether the oversight costs were recoverable, the Court of Appeals applied the *"NCTA* doctrine." The *NCTA* doctrine derives from the Supreme Court's decision in *National Cable Television Ass'n v. United States*, 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974) [hereinafter *"NCTA"*]. *NCTA* involved a constitutional challenge to regulatory fees assessed by the Federal Communications Commission ("FCC"). The petitioners argued that the fees were more like taxes because the fees at issue, like taxes, are levied arbitrarily and without respect to any benefit conferred on the regulated party. The petitioners concluded that Congress had unconstitutionally delegated its exclusive taxing power to the FCC, an executive agency. *Id.* at 340–41, 94 S.Ct. at 1148–49. The Supreme Court expressly declined to address the nondelegation argument, opting instead to read the statute narrowly to avoid the constitutional issue. *Id.* at 342, 94 S.Ct. at 1149–50.

As the Court of Appeals noted in *Rohm and Haas, NCTA* has evolved into a rule of administrative law and statutory construction: "Congress must indicate clearly its intention to delegate to the Executive the discretionary authority to recover administrative costs not inuring directly to the benefit of the regulated parties by imposing additional financial burdens, whether characterized as "fees" or "taxes," on those parties." *Skinner v. Mid–America Pipeline Co.*, 490 U.S. 212, 224, 109 S.Ct. 1726, 1734, 104 L.Ed.2d 250 (1989), *quoted in Rohm and Haas*, 2 F.3d at 1273. Mindful of the Court of Appeals' judgment against it in *Rohm and Haas*, the government in the instant case argues that the requisite clear indication of intent resides in the CERCLA § 9601(24) definition of "remedial" which, as previously noted, the Court of Appeals did not consider.[2] The government has squarely presented the removal/remedial distinction here, and it is against this backdrop that this court analyzes the PRPs' arguments.

### B.

The PRPs first suggest that the court can avoid a *Rohm and Haas*-type problem by

---

**2.** Section 9601, the definitional section of CERCLA, provides in subsection 24 that:

(24) The terms "remedy" or "remedial action" means [mean] those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to, such actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances and associated contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, collection of leachate and runoff, onsite treatment or incineration, provision of alternative water supplies, *and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment.*
42 U.S.C. § 9601(24) (emphasis added). The United States argues that the language "and any monitoring reasonably required ..." is a sufficiently clear congressional expression of intent to permit recovery of the costs of overseeing privately funded remedial activities.

narrowly construing the consent decree's oversight cost provision. They urge that this provision should be construed to exclude oversight costs that are not recoverable under CERCLA, and that such a construction would somehow save the decree. Although this avenue has some surface appeal, the court finds that such a construction is not plausible given the terms of the decree.

The consent decree is a contract, and thus construction of the decree's terms is driven by contract principles. *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975); *Halderman v. Pennhurst State Sch. and Hosp.*, 901 F.2d 311, 318 (3d Cir.), *cert. denied*, 498 U.S. 850, 111 S.Ct. 140, 112 L.Ed.2d 107 (1990). Insofar as the challenges to the decree require a construction of the agreement, such a construction must occur against the backdrop of contract law. *See generally Fox v. United States Dept. of Housing and Urban Dev.*, 680 F.2d 315, 319–20 (3d Cir.1982) (discussing contract principles as applied to consent decrees generally).

There is simply no language in the decree that could permit the PRPs' desired construction. Such a construction would be tantamount to insertion of new language into the contract. A court, however, should not rewrite the contract for the parties.[3] *Philadelphia v. Lieberman*, 112 F.2d 424, 429 (3d Cir.) (Maris, J.), *cert. denied*, 311 U.S. 679, 61 S.Ct. 48, 85 L.Ed. 438 (1940). Moreover, the law of this court clearly prohibits unilateral modification of proposed consent decrees. *Alcan*, 1993 WL 232194, at *2, 1993 U.S.Dist. LEXIS 9043, at *8.

The PRPs next argue that in light of *Rohm and Haas*, entry of the decree would violate "public policy" insofar as it permits the government to recover oversight costs that are otherwise nonrecoverable. This argument draws upon the Court of Appeals' *NCTA* discussion. The *NCTA* doctrine as applied by the *Rohm and Haas* court, although ostensibly a specialized rule of statutory construction, draws its force from the constitutionally based non-delegation doctrine. *Skinner*, 490 U.S. at 222–224, 109 S.Ct. at 1732–34.[4] If the government (via the Attorney General and EPA) in this case claims authority under the consent decree to exact oversight costs "not inuring directly to the benefit of the regulated parties," that authority must derive from a clear congressional expression of intent. *Id.* at 224, 109 S.Ct. at 1733–34. The Court of Appeals in *Rohm and Haas* explained that:

> The budget and appropriation process gives executive agencies an incentive to operate efficiently and makes them accountable to the Congress. When an agency asserts the right to secure financing of its activities by assessing its costs against those whom it regulates, that incentive and accountability are lost.

2 F.3d at 1274. By requiring a clear expression of intent, the *NCTA* doctrine prevents potentially sticky non-delegation doctrine problems by presuming that Congress will legislate with specificity when delegating the authority to assess tax-like costs against select private entities. *Id.* 490 U.S. at 224, 109 S.Ct. at 1733–34; *Rohm and Haas,* 2 F.3d at 1274.

If the oversight costs sought here are subject to the *NCTA* doctrine, the government could "prevail only if the statutory definition of [remedy/remedial] unambiguously allows for the government to recover" them. *Id.* at 1274. This special rule applies with equal force whether this litigation proceeds through to trial or resolves itself by consent decree, because in either case this court's power to enter judgment is limited by CERCLA. *System Fed'n No. 91 v. Wright,* 364 U.S. 642, 651, 81 S.Ct. 368, 373, 5

---

3. Indeed, the PRPs' preferred remedy is to have the court unilaterally modify the decree to contain specific language to this effect.

4. The nondelegation doctrine is a separation of powers principle in which the Supreme Court has recognized that "Congress generally cannot delegate its legislative power to another Branch." *Mistretta v. United States,* 488 U.S.

361, 371–72, 109 S.Ct. 647, 654, 102 L.Ed.2d 714 (1989). All that the doctrine requires is that Congress "lay down by legislative act some intelligible principle" to which the delegatee must conform. *Id.* (quoting *J.W. Hampton, Jr., & Co. v. United States,* 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624 (1928)).

L.Ed.2d 349 (1961) ("District Court's authority to adopt a consent decree comes only from the statute which the decree is intended to enforce"). The court therefore will proceed carefully to assure itself that EPA does not exact oversight costs in violation of *NCTA*. Having determined that the government cannot recover oversight costs if such a recovery would run afoul of *NCTA*, the court next must determine what impact, if any, the potential *NCTA* problem has on entry of the consent decree.

The provision for oversight costs in the consent decree is broad: "Settling Defendants shall reimburse the United States for all Oversight Costs not inconsistent with the NCP...." Consent Decree at ¶ V.A. 3. It requires the United States to issue annually a scrupulously documented "written demand for payment," after which the PRPs must remit payment in the form of a certified check made payable to the Superfund. The decree also provides the PRPs with an informal negotiation mechanism to challenge all or part of an annual demand for (1) improper documentation, (2) accounting errors, or (3) inconsistency with the National Contingency Plan, 40 C.F.R. Part 300. If attempts to informally resolve a dispute fail, the PRPs have further recourse in the form of a petition to this court. Decree at ¶ V.A. 4.

■■■ After careful consideration, and mindful of the strong policy in favor of settlement in CERCLA actions, the court concludes that the potential *NCTA* problems should not bar entry of the decree. In light of the decree's provision of procedures for resolving disputed assessments, which makes the federal courts the ultimate arbiters of disputes, the court finds it prudent to defer consideration of *NCTA*-type challenges until costs are properly assessed and disputed.

The court acknowledges that deferral of the *NCTA* determination may create future administrative burdens on both the parties and the court, and that resolution of the issues now would add a stronger sense of finality to the decree. However, subsequent developments may obviate the need to decide this question at all. Congress might react and legislatively resolve the problem. Or, more realistically, EPA may, in light of *Rohm and Haas*, re-assess the wisdom of asserting the authority to recover certain types of oversight costs. Given the possibility, however remote, that the government might never seek costs that trigger a *NCTA*-type problem, the court will wait until such costs are sought. At such time, the government will have amassed its detailed documentation justifying the costs incurred, which will permit the court to address a more concrete dispute.

### C.

Both the PRP group and the non-party commenters make arguments that the decree is not "reasonable, fair, and consistent with the goals that CERCLA is intended to serve." This court considers each in turn.

#### 1. Reasonableness

■■■ The PRPs argue that *Rohm and Haas* renders the decree unreasonable. "Reasonableness" is a fact-sensitive inquiry that depends upon the terms of the decree and the nature of the relief sought and the remedy contemplated. *Cannons*, 899 F.2d at 89. Where the decree specifies a response to the hazard, "reasonableness" can require that the decree promote an effective cleanup of the site. *Id.* at 89–90. If the decree provides that the government may recoup its costs, "reasonableness" requires that the settlement adequately reimburse the public fisc for incurred costs attributable to the PRPs. *Id.* Moreover, the decree's resolution of the dispute ideally should rationally reflect the parties' respective bargaining positions. *Id.*

■■■ The PRPs have latched onto the *Cannons* court's "third integer" of reasonableness, namely, that the settlement should reasonably reflect the relative bargaining strengths of the parties to the decree. *Cannons*, 899 F.2d at 90. The gist of this argument is that, had the *Rohm and Haas* decision been the law in this Circuit during the negotiations for the consent decree, the balance of bargaining power would have been different. Thus, the PRPs conclude that the settlement no longer reflects the parties' true bargaining positions.

■ Assuming that *Rohm and Haas* applies to the oversight costs claimed in this case, and therefore might have altered the relative bargaining positions of the parties to the decree, it does not follow that the decree is unreasonable. The court is of the opinion that the evaluation of relative bargaining strengths must occur against the backdrop of what the parties knew or should have known at the time the parties agreed to be bound. Although hindsight is twenty-twenty, a subsequent shift in the juridical risk should not normally be considered in evaluating whether the parties' proposed allocation of rights flows rationally from the relative strengths and weaknesses of their positions.

This court can think of many subsequent developments in the instant third-party suit alone that would have altered the PRPs' perception of the equilibrium if known during the negotiations. If such developments were considered and thus permitted to adjust the parties' relative bargaining positions from a backward-looking perspective, consent decrees would lack any sense of finality with respect to the parties' considered negotiations and careful assessments of the risks of going to trial. This is particularly so here, because the 30–day notice and comment period provided for by CERCLA, combined with normal delays of litigation, creates considerable lag time between the signing of the decree and the court's approval of it. Accordingly, this court will not consider subsequent events in evaluating the parties' relative bargaining positions. The court finds that the *Rohm and Haas* decision does not render the decree "unreasonable."

## 2. Fairness

■ "Fairness" has both a procedural and a substantive component. *Cannons,* 899 F.2d at 86–87. Procedural fairness requires that the parties to the decree conduct their negotiations forthrightly to achieve a bargained-for resolution to the suit. *Id.* at 86. Substantive fairness goes to the fairness of the result, and requires that settlement terms are "based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability among the settling parties according to rational … esti-

mates of how much harm each PRP has done." *Id.* at 87. Both the PRPs and the non-party commenters address the fairness of the decree.

### a. Procedural fairness

■ "To measure procedural fairness, a court should normally look to the negotiation process and attempt to gauge its candor, openness and bargaining balance." *Id.* at 86 (citing *United States v. Rohm and Haas Co.,* 721 F.Supp. 666, 680–81 (D.N.J.1989)). The parties to the decree represent that negotiations were fair, and no one contends that the bargaining in this case was otherwise. This case has been characterized by hotly contested claims of responsibility litigated by experienced and capable environmental law attorneys. Absent some hint or allegation of collusion or unfairly disproportionate bargaining power, this court will accept the parties' representations that the negotiations were fair. The court is satisfied that the PRPs and EPA have bargained forthrightly.

■ The municipal commenter group argues that the government unfairly refused to enter into settlement negotiations with them, contrary to EPA's stated policy favoring early settlement with municipalities. The court will not consider this argument because the government's decisions on whether and with whom to settle are not subject to judicial review. 42 U.S.C. § 9622(a). In all other respects, the commenters were treated fairly, as evidenced by the EPA's careful consideration of their objections to the decree. Absent other objections, the court must find that the consent decree is a product of fair procedures.

### b. Substantive unfairness

■ The PRPs argue that *Rohm and Haas* renders the decree substantively unfair. Insofar as substantive fairness requires that "a party should bear the cost of the harm for which it is legally responsible," *Cannons,* 899 F.2d at 87, all that is required is some rational apportionment of liability among the settling parties. *Id.* There is no suggestion that *Rohm and Haas* results in disparate allocation of costs among the settling PRPs. The PRPs, however, argue that

their interpretation of *Rohm and Haas* precludes them from obtaining contribution for the oversight costs in the third-party action in this case, and that this would render the decree substantively unfair. As the PRPs note, this "unfairness" results from their expectation—at the time of signing the decree—that the costs would be recoverable from the third-party defendants.

While the court appreciates that *Rohm and Haas* adds yet another element of uncertainty to the resolution of the third-party contribution action, this uncertainty does not render the decree substantively unfair. The courts that have tested CERCLA consent decrees for substantive fairness have focused upon whether the method for allocating costs among settling PRPs was irrational. *Cannons*, 899 F.2d at 87–88 (collecting cases); *United States v. Montrose Chem. Corp.*, 793 F.Supp. 237, 241 (C.D.Cal.1992). *Cf. United States v. BASF–Inmont Corp.*, 819 F.Supp. 601, 608–09 (E.D.Mich.1993) (focusing only on procedural fairness). There is no suggestion that the allocation in this settlement was arbitrary in light of *Rohm and Haas*. While the court acknowledges that third-party defendants may attempt to assert *Rohm and Haas* as a defense to the PRPs' recovery of certain costs—and it is by no means certain that *Rohm and Haas* permits such a result—this is precisely the type of uncertainty upon which settling parties place a premium when hammering out an agreement at arms-length. The court finds that the agreement is not substantively unfair in light of *Rohm and Haas*.

■■■ All three non-party commenting groups argue that the decree is unfair from their perspectives because the settlement will saddle non-settling persons with disproportionate liability. They point out that the government's original claim of $1,794,700 for past response costs was reduced to the sum of $1,209,250 in the consent decree. The commenters are rightly concerned that the government might someday assert claims against them for the residue.

Although this scenario may seem harsh and unfair, any unfairness is inherent in the statutory scheme and is not a mere byproduct of the consent decree. "Congress explicitly created a statutory framework that left nonsettlors at risk of bearing a disproportionate amount of liability." *Cannons*, 899 F.2d at 91. CERCLA permits the government to pursue nonsettlors for the amount of costs not recovered through the settlement, 42 U.S.C. § 9613(f)(2), and settling PRPs are immune from contribution claims from nonsettling parties. 42 U.S.C. § 9613(f)(2).

Even if CERCLA did not expressly contemplate this result, however, the court would be unable to find that this result was substantively unfair. The government will recover approximately 66% of its claimed past response costs from only 10 PRPs. In the event that the government sues nonsettlors for the remainder, CERCLA provides that the potential liability of nonsettling parties is reduced dollar-for-dollar by the amount of the settlement. 42 U.S.C. § 9613(f)(2). Also, when resolving the PRPs' claims for contribution against the third-party defendants, this court will "allocate response costs among liable parties using such equitable factors as the court determines are appropriate." *Id.* at § 9613(f)(1). Although the potential for disproportionate liability remains for the third-party defendants, this result would be neither unfair nor proscribed by CERCLA.

■■■ One group of commenters argues that the decree has the effect of bestowing contribution protection upon the PRPs for future costs whether or not the PRPs pay these costs to the government. These commenters conclude that should the PRPs fail to pay future costs, and should the government pursue third-party defendants for those unpaid costs, the third-party defendants could not obtain contribution from the defaulting PRPs.

This court disagrees with the commenters' construction of the scope of contribution protection. Section IX.B. of the decree provides that,

"upon receipt by EPA of the payments required by Section V.A.(1) [past response costs] and, if required, Section V.A.(2) [potential PaDER reimbursement], Settling Defendants and Related Persons are entitled to such protection from contribution

actions or claims as is provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2), for the matters set forth in Section VII.A."

CERCLA § 113(f)(2) provides that a "person *who has resolved its liability to the United States* in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." 42 U.S.C. § 9613(f)(2) (emphasis added). Section VII.A. of the decree provides that:

> *Except as provided by in Paragraph C below, this Consent decree finally resolves the liability to the United States* of Settling Defendants and Related Persons for all costs of response incurred now or in the future in connection with all work at the Site conducted prior to the date of lodging of this Consent Decree, except for costs incurred by the United States after December 8, 1992, for oversight of the work under the Unilateral Orders; (2) all Oversight Costs incurred or to be incurred by the United States after December 8, 1992; and (3) all Department of Justice or other enforcement costs incurred by the United States incident to the finalization and entry of this Consent decree.

(emphasis added). Accordingly, the contribution protection provision in the consent decree, in accordance with the explicit language of CERCLA § 113(f)(2), provides such protection only insofar as the settling defendants have "resolved [their] liability to the United States." The "Paragraph C" referred to in Section VII.A. above reserves the right of the United States to sue the PRPs for, among other things, "claims for Oversight Costs incurred by the United States after December 8, 1992, *to the extent that such claims are not reimbursed by Settling Defendants....*" Consent Decree at Section VII.C.2.(4) (emphasis added).

From the foregoing, it is clear to the court that: (1) the consent decree provides contribution protection to the PRPs only for costs for which the PRPs have "resolved [their] liability to the United States," and (2) the consent decree resolves the PRPs' liability for future oversight costs only insofar as the PRPs reimburse EPA for those costs. Given this construction of the consent decree, the court finds the commenters' objection to the contribution protection to be without merit.

### 3. Consistency with CERCLA's Goals

 Finally, the PRPs contend that in light of the *Rohm and Haas* Court's interpretation of CERCLA, the consent decree is inconsistent with CERCLA. This argument is without merit, and misapplies this prong of the inquiry. The "consistency" required under CERCLA is one of fidelity to CERCLA's broad policies—it means only that the decree must further the larger purposes that Congress intended CERCLA to serve. *Cannons*, 899 F.2d at 90. As noted above, Congress intended to achieve expedited and effective responses to environmental hazards and intended to insure that responsible parties bear the costs of response. *Cannons*, 899 F.2d at 90–91. The PRPs completely fail to identify any way in which the government's recovery of oversight costs, even against the backdrop of *Rohm and Haas*, frustrates these goals. The court finds that the settlement of this case as embodied in the consent decree will serve the goals of CERCLA.[5]

## IV. CONCLUSION

In light of the foregoing, this court finds that the consent decree is lawful, and that it is reasonable, fair and consistent with the goals that CERCLA was intended to serve. Entry of the decree is therefore appropriate. An order follows and the consent decree is attached as an appendix.

---

**5.** At an early stage in this case, the court deferred until trial its judgment on whether the EPA's response at the site was arbitrary, capricious, or inconsistent with the NCP. *United States v. Atlas Minerals and Chems., Inc.,* 797 F.Supp. 411, 422 (E.D.Pa.1992). Although entry of the consent decree would preclude trial of this issue by the PRPs, the EPA's actions may nonetheless be challenged for arbitrariness. *See Akzo,* 949 F.2d at 1424. No party or commenter objects to entry of the decree on the grounds that EPA's response to the site has been arbitrary and, therefore, this court does not consider it.

**656**

APPENDIX

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA

v.

ATLAS MINERALS AND CHEMICALS, INC.,

*et al.*

v.

R. EMORY MABRY, *et al.*

Civil Action

No. 91–5118

***ORDER***

Filed March 1, 1994

CAHN, C.J.

AND NOW, this 1st day of March, 1994, upon consideration of the United States' Motion to Enter the Consent Decree, and the responses thereto, IT IS ORDERED that:

1. The United States' Motion to Enter the Consent Decree [501–1 and 506–1] is hereby GRANTED;

2. The Defendants' Motion to Modify or Withdraw from the Consent Decree [595–1 and 595–2] is hereby DENIED;

3. The Consent Decree is hereby ENTERED and ADOPTED as the judgment of this Court.

4. All claims by the United States of America against the defendants are hereby DISMISSED WITH PREJUDICE except as provided in the Consent Decree.

5. All claims by the defendants against the United States of America are hereby DISMISSED WITH PREJUDICE except as provided in the Consent Decree.

6. The following motions, as represented by their docket entries, are hereby DENIED because entry of the Consent Decree renders the motions moot: 321–1; 321–2; 350–1; 356–1; 364–1; 364–2; 364–3 and; 373–1.

BY THE COURT:

/s/ Edward N. Cahn

Edward N. Cahn, Chief Judge