**UNITED STATES of America, Plaintiff,**

v.

**Louis SERAFINI, et al., Defendants,**

**and**

**CITY of SCRANTON, PENNSYLVANIA, Defendant and Third Party Plaintiff,**

v.

**LACKAWANNA REFUSE REMOVAL, INC., et al., Third Party Defendants.**

**No. 3:CV–86–1591.**

United States District Court, M.D. Pennsylvania.

Dec. 7, 1994.

W. Benjamin Fisherow, Steven R. Baer, Lands and Natural Resources Div., Environmental Enforcement Section, Dept. of Justice, Washington, DC, Bruce D. Brandler, Asst. U.S. Atty., Scranton, PA, Lydia Isales, Asst. Regional Counsel Region III, U.S. E.P.A., Philadelphia, PA, for plaintiff.

Brian J. Cali, Robert A. Cecchini, Dunmore, PA, for defendants Louis Serafini, Alfred Bernabei, Ernest Buttafoco, and Michael J. Naples, Jr., Individually and Training as Empire Contracting Co.

***MEMORANDUM***

McCLURE, District Judge.

**BACKGROUND**

This is an action for injunctive relief and recovery of response costs pursuant to Sec-

tions 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9606(a) and 9607(a), in connection with the Taylor Borough hazardous waste site located south of Scranton, Pennsylvania. The remedial action at the Taylor Borough site was completed pursuant to a consent decree negotiated by the United States and several defendants. The United States then sought reimbursement of costs it incurred in responding to the release of hazardous substances at the site from the remaining defendants, the City of Scranton (Scranton) and Louis Serafini, Alfred Bernabei, Ernest Buttafoco, and Michael J. Naples, Jr., individually and trading as Empire Contracting Company (hereafter, collectively the Empire defendants). On December 4, 1989, Scranton filed a third-party action against numerous defendants seeking contribution and indemnification under CERCLA and common law theories.

Currently before the court are:[1] 1) a motion[2] by defendant and third-party plaintiff Scranton for reconsideration of the court's orders dated June 5, 1992 and September 17, 1993 granting the United States' motion for response costs; and 2) a motion[3] by the Empire defendants seeking the same relief.[4]

1. The court's disposition of the pending motions was deferred at the parties' request.

2. Record document no. 441.

3. Record document no. 442.

4. The Empire defendants concur in Scranton's motion. (Record document no. 442, p. 1)

5. Rule 59(e) provides:

> A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.
> Fed.R.Civ.P. 59(e).

The court's order entering final judgment against Scranton was dated September 17, 1993. Scranton's motion for reconsideration was filed October 1, 1993 (the tenth day, excluding holidays and weekends pursuant to Fed.R.Civ.P. 6(a)), rendering it timely under Rule 59(e).

Even if the motion were not timely under Rule 59(e), adequate grounds exist for granting the relief sought under Rule 60(b).

Rule 60(b) provides, in relevant part:

Defendants seek an order: 1) vacating the prior orders; 2) directing the United States to submit, within forty-five days from the date of the order "detailed documentation" in support of its previously submitted motion for summary judgment on response costs; and 3) granting Scranton and the other non-settling defendants the right to take a deposition pursuant to Fed.R.Civ.P. 30(b)(6) regarding the cost documentation submitted by the United States.

For the reasons which follow, both motions will be granted.

## DISCUSSION

### STANDARD OF REVIEW

■ Scranton moves for reconsideration under Fed.R.Civ.P. 59(e)[5] and Local Rule 412,[6] or in the alternative, Fed.R.Civ.P. 60(b). A rule 59(e) motion must rely on at least one of three grounds: 1) intervening change in controlling law, 2) availability of new evidence not previously available, or 3) need to correct a clear error of law or prevent manifest injustice. *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 626 (S.D.Miss. 1990); *Natural Resources Defense Council, Inc. v. U.S. E.P.A.*, 705 F.Supp. 698, 702 (D.D.C.1989), vacated on other grounds upon agreement of the parties, 707 F.Supp. 3 (D.D.C.1989).

> On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect.... (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken.
> Fed.R.Civ.P. 60(b).

Although the Empire defendants' motion for reconsideration was filed four days outside the Rule 59(e) ten-day deadline (Defendants' motion, record document no. 442, was filed on October 5, 1993.), this court's grant of the relief requested therein is, nevertheless, justified under Rule 60(b).

6. Former Local Rule 412 is now Local Rule 7.10, under the most recent amendments to the local rules. Local Rule 7.10 provides:

> Any motion for reconsideration or reargument shall be filed within ten (10) days after the entry of the judgment, order, or decree concerned.

■ Scranton relies on the first ground. Citing the decision by the United States Court of Appeals for the Third Circuit in *United States v. Rohm and Haas Co.*, 2 F.3d 1265 (3d Cir.1993) (*Rohm* ), it seeks reconsideration of this court's grant of summary judgment in favor of the United States on the issue of response costs. Scranton argues that *Rohm, supra:*

> unequivocally holds that costs incurred by the United States in overseeing a hazardous waste cleanup performed by a private party pursuant to consent decree are not recoverable under ... [CERCLA] ... [T]he orders entered by this Court on June 5, 1992 and September 17, 1993 granted relief for costs incurred by the United States in its oversight of the cleanup by private parties of the site at issue in this case, and because the recovery of such oversight costs is flatly prohibited under CERCLA by the Third Circuit's controlling precedent in *Rohm and Haas.*

(Record document no. 441, pp. 1–2)

In support of its motion, Scranton cites the following:

1. At issue in this lawsuit is the responsibility for response costs incurred in connection with the cleanup of the landfill located on Snake Road in Taylor Borough, Pennsylvania;

2. Certain defendants to this action (settling defendants) entered into a consent decree with the United States [7]—the consent decree was approved by the court on July 20, 1987;

3. Pursuant to the consent decree, the settling defendants performed the remedial actions selected by the EPA at the Taylor site;

4. The EPA supervised the remedial action performed by the settling defendants, and in so doing, incurred oversight costs;

5. Such costs were part of the total response costs sought by the United States pursuant to its motion for summary judg-

ment against Scranton filed February 14, 1991; (See: record document no. 458, p. 1);

6. The United States' motion was granted by this court's order of June 5, 1992, which awarded the United States response costs totalling $2,333,761.12;

7. The June 5, 1992 order was not a final order due to the pendency of Scranton's claims for contribution against third party defendants, See: Fed.R.Civ.P. 54(b);

8. In an opinion entered August 12, 1993 in *Rohm and Haas, supra,* the Third Circuit ruled that costs incurred by the federal government in overseeing cleanup operations conducted by private parties are not recoverable as removal or remedial costs under section 107 of CERCLA, 42 U.S.C. § 9607;

9. On September 17, 1993, upon praecipe of the United States, this court entered an order directing that final judgment be entered pursuant to the June 5, 1992 order granting summary judgment in favor of the United States and against Scranton on its request for response costs incurred at the site, Fed.R.Civ.P. 54(b).

(Record document no. 441, pp. 2–5)

Scranton argues, based on the foregoing that:

1) This court's orders dated June 5, 1992 and September 17, 1993 granting response costs which include the cost of overseeing cleanup operations conducted by private parties are "squarely at odds with the Third Circuit's holding in *Rohm and Haas;*"

2) "The United States will not be unfairly prejudiced by the granting of the instant Motion;" and

3) Scranton "acted promptly and diligently in raising this issue before the Court."

(Record document no. 441, p. 5, ¶¶ 12–15)

The background facts, i.e. this court's entry of judgment in plaintiff's favor for cleanup costs which included costs incurred in overseeing cleanup activities undertaken by private parties are undisputed and undisput-

---

7. A copy of the consent decree is attached to Scranton's motion (record document no. 441) as exhibit "A".

able. Scranton's recitation of the Third Circuit's holding in *Rohm, supra,* is correct. The court stated unequivocally that government oversight costs incurred in monitoring the cleanup of a hazardous site conducted by private parties are not recoverable as removal or remedial costs under CERCLA section 107, 42 U.S.C. § 9607.

Decisions from this circuit subsequent to *Rohm, supra* have universally found that to be its holding. See, e.g., *FMC Corp. v. United States Department of Commerce,* 29 F.3d 833, 850 (3d Cir.1994) (*Rohm* "held that the government could not recover from private parties the cost of government oversight of the removal and remedial activity performed and paid for by a private party.") and *United States v. Witco Corporation,* 853 F.Supp. 139, 142 (E.D.Pa.1994) "(After careful examination and consideration of the Third Circuit's holding in ... *Rohm* ... we are constrained to agree with the defendant that such oversight costs are not recoverable."). Cf. *United States v. Lowe,* 864 F.Supp. 628, 629 and 630 (S.D.Tex.1994) (District court for the Southern District of Texas rejected as "unpersuasive" the Third Circuit's reasoning supporting its holding in *Rohm and Haas, supra,* that the United States could not recover its costs for overseeing performance of remedial actions conducted by private parties.) and *United States v. Atlas Minerals and Chemicals, Inc.,* 851 F.Supp. 639, 647–50 (E.D.Pa.1994) (*Rohm and Haas* holding precluding recovery of oversight costs as "costs of removal" under 42 U.S.C. § 9607(a)(4)(A) and § 9601(23) did not render invalid previously negotiated consent decree providing for recovery of such costs).

The United States' argument that *Rohm and Haas, supra,* limits only the recovery of oversight costs when such costs are sought as "removal" costs and does not address the recoverability of such costs when they fall under the category of "remedial" costs was

rejected by the Third Circuit's recitation of its holding in *Rohm and Haas, supra,* in a 1994 decision, *FMC Corp., supra,* 29 F.3d at 850. In the latter case, the court summarized the *Rohm and Haas, supra,* holding as follows:

In our recent opinion in ... *Rohm and Haas* ... we held that the government could not recover from private parties the cost of government oversight of the removal and remedial activity performed and paid for by a private party. We recognized the incomparability between government and private action, and were unwilling to read CERCLA as treating government cleanups and private cleanups as equivalent actions for purposes of recovery of costs. *See id.* at 1277–78. We noted that it was "far more likely that Congress viewed EPA's overseeing of a private party's removal activities as **qualitatively different** from EPA's actually performing removal activities." *Id.* at 1277 (emphasis added.)

... [W]e stated in *Rohm and Haas* that the government's oversight "is intended to protect the public interest rather than the interests of those being overseen," and that therefore the government could not recover its administrative costs from the regulated parties without "a clear statement of congressional intent." *Id.* at 1273–74.

*Id.* at 850.

Further, even if the court's holding in *Rohm and Haas, supra,* was viewed as limited solely to the question of recoverability of oversight costs as removal costs, its analysis applies with equal force to the argument that such costs are recoverable as remedial costs. In rejecting EPA's contention that such costs were recoverable as removal costs, the court considered the following: 1) the statutory definition of "removal" costs set forth at 42 U.S.C. § 9601(23),[8] *Rohm and Haas, supra,*

---

**8.** The terms "remove" and "removal" are defined as:

> [T]he cleanup or removal of released hazardous substances from the environment, such actions as may be necessary [sic] taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and

evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release. The term includes, in addition, without being

2 F.3d at 1271; 2) the United States Supreme Court's holding in *National Cable Television Ass'n, Inc. v. United States*, 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974), which stands for the proposition that "Congress must indicate clearly its intention to delegate to the Executive the discretionary authority to recover administrative costs not inuring directly to the benefit of regulated parties by imposing additional financial burdens, whether characterized as 'fees' or 'taxes,' on those parties." *Rohm and Haas, supra*, 2 F.3d at 1273, citing *Skinner v. Mid-America Pipeline Co.*, 490 U.S. 212, 224, 109 S.Ct. 1726, 1733–34, 104 L.Ed.2d 250 (1989) and *FEA v. Algonquin SNG, Inc.*, 426 U.S. 548, 559 n. 10, 96 S.Ct. 2295, 2302 n. 10, 49 L.Ed.2d 49 (1976); 3) the oversight costs sought by the EPA "are costs incurred by the government in monitoring private parties' compliance with their legal obligations;" *Rohm and Haas, supra*, 2 F.3d at 1273; 4) EPA "oversight is intended to protect the public interest rather than the interests of those being overseen. Thus the oversight costs ... [sought by EPA] ... are 'administrative costs' of the kind discussed in *NCTA*, i.e. 'administrative costs not inuring directly to the benefit of regulated parties' but rather to the public at large;" *Id.* at 1273; 5) because questions of public policy are involved, the courts will not "presume Congress to have intended a statute to create the dramatic and unusual effect of requiring regulated parties to pay a large share of the administrative costs incurred by the overseeing agency unless the statutory language clearly and explicitly requires that result. Thus, EPA can only prevail if the statutory definition of removal unambiguously allows for the government to recover the oversight costs it here seeks." *Id.* at 1274; 6) if CERCLA's definition of "removal" is read *not* "to include the sort of oversight activity in question, then § 107(a) does not allow government recovery of the costs incurred in conducting such over-

sight activity. In making our determination, we must keep in mind that under *NCTA*, the government may recover the oversight costs it here seeks only if Congress clearly intended that such costs be recoverable; any ambiguity must be resolved in favor of the defendants;" *Id.* at 1275; 7) "Nowhere in the definition of removal is there an explicit reference to oversight of activities conducted and paid for by a private party. Nowhere is there an explicit statement that Congress considers administrative and regulatory costs incurred overseeing the removal and remedial actions of a private party to be removal costs in and of themselves." *Id.* at 1275; 8) "Given the context in which CERCLA was enacted, we find it highly significant that Congress omitted any mention of oversight, or of government activities conducted under § 106, in the definition of removal ... [W]hen Congress enacted § 104(a) and § 107 of CERCLA, it contemplated a mechanism by which the government would perform cleanups of hazardous waste and then seek reimbursement from the parties ..."; *Id.* at 1276; 9) "When Congress passed CERCLA, and when it amended the statute in 1986, it undoubtedly was aware that pursuant to CERCLA § 106 as well as other statutes, EPA would be forcing numerous private parties to conduct removal and remedial activities and overseeing the implementation of its directives." *Id.* at 1276; 10) "Given the extent of ... expected private activity and the established prior practice of financing oversight activities from appropriate funds, a directive that EPA would henceforth be able to recover all of the costs of overseeing private corrective actions under any applicable environmental statute would represent a major policy change." *Id.* at 1276–77; 11) "We think it ... likely that Congress viewed EPA's overseeing of a private party's removal activities as qualitatively different from EPA's actually performing removal activities and intended for EPA to recover the costs of

---

limited to, security fencing or other measures to limit access, provision of alternative water supplies, temporary evacuation and housing of threatened individuals not otherwise provided for, action taken under section 9604(b) of this title, and any emergency assistance which may be provided under the Disaster Relief and Emergency Assistance Act.

42 U.S.C. § 9601(23).

"Response" is an all-encompassing term which is defined in section 101(25) as: "remove, removal, remedy, and remedial action, all such terms (including the terms 'removal' and 'remedial action') include enforcement activities related thereto." 42 U.S.C. § 9601(25).

the latter but not the costs of the former. Had its view and intent been otherwise, we are confident that it would at least have made some reference to government activity under § 106 when it was carefully providing examples of removal actions at the conclusion of the definition." *Id.* at 1277 (footnote omitted); and 12) "[V]arious statutory provisions, as well as the general structure of CERCLA, suggest to us that Congress did not intend to include oversight in the definition of removal." *Id.* at 1277.

Based on all of the foregoing, the court found "the clear indication mandated by *NCTA* to be lacking" and held, on that basis, that the United States was not entitled to recover the cost of overseeing a private cleanup as a removal cost. *Id.* at 1278.

Application of the same analysis to the argument that such costs are recoverable as remedial costs would lead to the same conclusion. Nothing in the definition of remedial costs, set forth at CERCLA section 101(24), 42 U.S.C. § 9601(24), refers to such costs. Remedial actions are defined as:

> those actions consistent with a permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to, such actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances or contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, collection of leachate and runoff, onsite treatment or incineration, provision of alternative water supplies, and any monitoring reasonably required to assure that

such actions protect the public health and welfare and the environment. The term includes the costs of permanent relocation of residents and businesses and community facilities where the President determines that, alone or in combination with other measures, such relocation is more cost-effective than and environmentally preferable to the transportation, storage, treatment, destruction, or secure disposition offsite of hazardous substances, or may otherwise be necessary to protect the public health or welfare; the term includes offsite transport and offsite storage, treatment, destruction, or secure disposition of hazardous substances and associated contaminated materials.

42 U.S.C. § 9601(24).

Like the definition of "removal", this definition contains no specific reference to oversight costs incurred by the EPA in supervising remedial actions undertaken by private parties. The closest the definition comes to mentioning such costs is a reference to "monitoring reasonably required to assure that such actions protect the public health and welfare and the environment." *Id.* The Third Circuit found a similar reference in the definition of removal[9] inadequate to satisfy the requirement that congressional intent to allow recovery of such costs be expressed clearly. The other reasons cited by the Third Circuit, e.g. other provisions of CERCLA, also support rejection of the argument that congressional intent to allow recovery of the cost of overseeing private party cleanup actions was signified in the act.

On that basis, we reject any argument that the removal/remedial distinction renders *Rohm and Haas, supra,* inapplicable to the facts of this case or requires that defendants' motion be denied.

We also reject the government's argument that the Third Circuit's holding in *Rohm and Haas, supra* is not applicable to this case because defendants have failed to demonstrate "a manifest error of fact or law" justifying its application. (Record document no.

---

9. The court stated: "EPA contends that the requisite clear statement of congressional intent ... may be found in the third of the five categories in the definition of 'removal,' i.e., 'such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances.'" *Rohm and Haas, supra,* 2 F.3d at 1275.

453, p. 13) An "intervening change in controlling law" is one of the grounds justifying the granting of a Rule 59(e) motion. Our determination that defendants' motion was timely filed under Rule 59(e),[10] renders irrelevant the government's argument that an intervening change in the law is not a valid justification for the filing of a Rule 60 motion.

For all of these reasons, defendants' motions for reconsideration will be granted and the judgment entered on September 17, 1993 vacated.

### ORDER

For the reasons stated in the accompanying memorandum, IT IS ORDERED THAT:

1. The motions filed by defendant and third-party plaintiff City of Scranton (Scranton) and by the Empire defendants[1] for reconsideration of the court's orders dated June 5, 1992 and September 17, 1993 granting the United States' motion for response costs[2] are granted.

2. The orders dated June 5, 1992 and September 17, 1993 and the judgment entered September 17, 1993 are vacated.

3. The United States is directed to submit, within forty-five (45) days from the date of this order, detailed documentation in support of its previously submitted motion for summary judgment on response costs, separating out those costs which constitute, or could reasonably be considered to constitute, the cost of overseeing removal or remedial actions undertaken by private parties.

4. Defendants are granted the right to take no more than three depositions pursuant to Fed.R.Civ.P. 30(b)(6) on the subject of the cost documentation submitted by the United States pursuant to paragraph 3, said depositions to be completed within thirty (30) days after service of the plaintiff's documentation.

5. Defendants shall file a response to plaintiff's documentation submittal within sixty (60) days after service of the same, stating their objections, if any, to the stated allocations and the basis for such objections.

6. Plaintiff may file a reply to defendants' objections within fourteen (14) days after service of the same.

---

**10.** See note 5 *supra.*

**1.** "Empire defendants" refers to Louis Serafini, Alfred Bernabei, Ernest Buttafoco, and Michael J. Naples, Jr., individually and trading as Empire Contracting Company.

**2.** Record document nos. 441 and 442, respectively.