The TOWN OF NEW WINDSOR, and The State of New York, Plaintiffs,

v.

TESA TUCK, INC., Lightron Corporation, Inc., Eugene Litman, Harry Basch, Mearl Corporation, Kollmorgen Instruments Corporation, Defendants.

TESA TUCK, INC. and Lightron Corporation, Third–Party Plaintiffs,

v.

The UNITED STATES of America, James S. Patsalos, James S. O'Neill, Charles T. Kavanagh, Cornell Group Service Corp., the New York State Department of Transportation, City of Newburgh, the New York State Thruway Authority, Third–Party Defendants.

No. 92 CV 8754.

United States District Court, S.D. New York.

July 31, 1996.

Kimberly Shaw Rea, Bleakley Platt & Schmidt, White Plains, NY, for Plaintiff.

Nicholas Z. Hegedus, Kiefferr and Hahn, New York City, for Defendant, Third Party Plaintiff and Cross Claimant Tesa Tuck.

Robert Emmet Hernan, Asst. Atty. General, N.Y.S. Department of Law, New York City, for Third Party Defendants N.Y.S. Thruway Authority, the N.Y.S. Dept. of Transportation and the State of New York.

Edwin Eisen, Eisen, Herschcopf & Schulman, New York City, for Third Party Defendant Mearl Corporation.

Donna Frosco, Keane & Beane, White Plains, NY, for Defendant and Third Party Plaintiff Lightron Corporation.

Gideon A. Schor, Asst. U.S. Atty., United States Attorney's Office, New York City, for Third–Party Defendant United States of America.

### AMENDED MEMORANDUM DECISION and ORDER

PARKER, District Judge.

### FACTS

This action under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), P.L. 99–499 (October 17, 1986), and state law is before this Court on certain defendants' motions for summary judgment dismissing the plaintiff State of New York's claims.[1]

The plaintiff Town of New Windsor ("the Town") is the owner of the New Windsor landfill ("the landfill"), which it operated from 1962 until 1976. In the 1980s, the New York State Department of Environmental Conservation ("the State") deemed the landfill a significant environmental threat, and listed it on its registry as an Inactive Hazardous Waste Site. The landfill is not a federal Superfund site and the United States Environmental Protection Agency ("EPA") has declined to list the landfill on CERCLA's National Priorities List ("NPL").

In 1989, the Town and the State executed an Administrative Order on Consent ("Con-sent Order") requiring the Town to conduct a detailed investigation of the landfill and to develop and implement a remedial plan. The Town agreed to indemnify the State for any claims arising from the Town's remedial actions at the landfill. After executing the Consent Order, the Town became eligible for 75% reimbursement by the State of part of its clean up costs pursuant to the New York Environmental Quality Bond Act of 1986 ("EQBA"). Under the EQBA, the State may assist financially strapped towns to meet their obligations under the New York State Environmental Conservation Law ("ECL") in responding to the threats posed by inactive hazardous waste sites owned and/or operated by towns.

In February 1990, the State entered a State Assistance Contract with the Town to reimburse the Town for 75% of the eligible clean-up costs incurred in remediating the landfill. Pursuant to the State Assistance Contract, reimbursement was conditioned on the Town's pursuit of this cost recovery action against those who contributed to the landfill, 75% of the recovery from which would be shared with the State.

Following a Remedial Investigation Feasibility Study ("RI/FS") by the Town's consultant and the issuance of a Record of Decision ("ROD") by the State, remedial action was undertaken in 1992–93. The Town has spent approximately $5 million, $3.5 million of which has been reimbursed by the State pursuant to the EQBA grant. The plaintiffs seek these costs, plus approximately $3 million in future monitoring costs, and oversight costs, as costs of response under CERCLA. Specifically, the State seeks the approximately $3.5 million that it spent reimbursing the Town for the cleanup, future monitoring costs, and costs in overseeing the Town's remediation.

Defendants Tesa Tuck, Inc., Lightron Corporation, Inc. and Kollmorgen Instruments Corporation now move for summary judgment dismissing the State's CERCLA claims on the grounds that (1) the State has not "incurred" response costs within the meaning

---

1. In an Order dated March 14, 1996, this Court granted the third-party defendant State of New York's motion to amend its pleading to realign as a party plaintiff.

of CERCLA; (2) as a potentially responsible party ("PRP"), the State is limited to a claim for contribution under § 113(f); (3) reimbursement by the State under the EQBA was improper and unlawful; and (4) CERCLA does not authorize the State to recover its costs in overseeing the Town's remediation.[2] This Court holds that, by reimbursing the Town with EQBA funds, the State has "incurred" CERCLA response costs and denies the motion for summary judgment.

## DISCUSSION

### 1. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court's responsibility is to perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *McNeil v. Aguilos,* 831 F.Supp. 1079, 1082 (S.D.N.Y. 1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)); *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See McNeil,* 831 F.Supp. at 1082 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam) (other citations omitted)). *See also Coach Leatherware Co., Inc. v. AnnTaylor, Inc.* 933 F.2d 162, 167 (2d Cir.1991) (citations omitted).

### 2. Whether, by reimbursing the Town pursuant to the EQBA, the State "incurred" response costs within the meaning of CERCLA

■ To recover under § 107(a)(4)(A), the State must have "incurred" costs of removal or remedial action at the landfill. *See, e.g., United States v. Alcan Aluminum Corp.,* 990 F.2d 711, 719–20 (2d Cir.1993) (citing *B.F. Goodrich Co. v. Murtha,* 958 F.2d 1192, 1198 (2d Cir.1992)). CERCLA does not define the term "incurred," but defendants argue that its meaning is plain, and inconsistent with the State's claim here. An obligation imposed by law, they argue, is a predicate to "incurred" costs,[3] and here, the Town, and only the Town, was legally obligated to take action at the landfill. Because the State itself took no remedial action at the landfill and was not obligated to provide assistance under the EQBA, defendants argue, it did not "incur" any costs.[4]

---

**2.** Defendants also move to dismiss the State's state law claims on the grounds that, as a matter of law, the State has no equitable subrogation rights and the evidence does not support claims of implied indemnification or unjust enrichment. The motion to dismiss the state law claims is denied without prejudice to renew at trial.

**3.** Black's Law Dictionary defines "incur" as "[t]o have liabilities cast upon one by act or operation of law, as distinguished by contract, where the party acts affirmatively. To become liable or subject to, to bring down upon oneself, as · to incur debt, danger, displeasure and penalty, and to become through one's own action liable or subject to." The case law confirms that "incur" pertains to liability. *See United States v. St. Paul Mercury Indem. Co.,* 238 F.2d 594, 598 (8th Cir. 1956) (" 'Incur emphasizes the idea of liability' .... [And i]t has been held that a thing for which there exists no obligation to pay, either express or implied, cannot in law be claimed to constitute an 'expense incurred.' "); *Waltuch v.*

*ContiCommodity Services, Inc.,* 833 F.Supp. 302, 314 (S.D.N.Y.1993) ("[t]he word 'incurred' means 'to become liable for' "), *aff'd in part, rev'd in part on other grounds,* 88 F.3d 87 (2d Cir. 1996); *Quarles Petroleum Co. v. United States,* 551 F.2d 1201, 1205 (Cl.Ct.1977) ("To incur means to become liable for or subject to; it does not mean to actually pay for it.").

**4.** Defendants further argue that CERCLA itself—specifically, its subrogation provision, *see* 42 U.S.C. § 9612—suggests that "incurred" costs do not include money spent reimbursing another person. According to defendants, CERCLA provides two separate mechanisms for cleaning up waste sites (1) a Government conducted cleanup under § 104(a), and (2) a private party cleanup pursuant to § 106(a). CERCLA, defendants explain, also makes government funds available to pay for response costs in two circumstances: (1) where the Government incurs costs in implementing remedial actions under § 104, *see* 42 U.S.C. § 9611(a)(1), and, (2) to reimburse non-

Defendants are correct in their premise—that "incur" refers to liability—but incorrect in their conclusion—that because the State reimbursed the Town with EQBA funds, it did not "incur" response costs. Under the New York State Constitution (Article 14) and statute (ECL § 27–1301 et seq.; State Finance Law § 97–b(3)), the State has a mandate to protect the environment and to ensure that those responsible for despoiling the environment, such as the Town and defendants, pay for cleaning it up. As a public entity charged with the responsibility of ensuring that hazardous waste sites are cleaned up and of expending state funds, including the EQBA, in that effort, see ECL §§ 27–1313, 52–0303; State Finance Law § 97–b(3), the State does not have the discretion presupposed by defendants. The State's position here is not that of a private lending institution that can pick and choose among the projects it finances.

Moreover, in accordance with its statutory and regulatory obligations, the State here was actively involved in the cleanup of the landfill. In the early 1980s, it conducted Phase I and Phase II studies, including field work, to determine whether hazardous substances were present at the landfill and to assess the impact of the landfill on the neighboring environment. After entering the Consent Order and executing the State Assistance Contract, the State reviewed and approved each of the steps in the investigation, design and remediation of the landfill. Finally, upon reviewing the Town's RI/FS, the State issued an ROD, in which it selected the remedy to be implemented at the landfill.

CERCLA expressly contemplates similar cooperative agreements between the Government and a state or political subdivision. Under § 104, a state or political subdivision may enter into a contract or cooperative agreement with the Government, whereby both may take action on a cost-sharing basis. See 42 U.S.C. § 9604(c), (d). CERCLA specifically refers to the Government's costs under such an agreement as "governmental response costs incurred," see § 42 U.S.C. § 9611(a)(1) (emphasis added), and courts have held that in these circumstances both the Government and the state or political subdivision "incur" response costs. See, e.g., United States v. Ottati & Goss, 694 F.Supp. 977, 995 (D.N.H.1988), aff'd in part, rev'd in part on other grounds, 900 F.2d 429 (1st Cir.1990); United States v. Ward, 618 F.Supp. 884, 896 (E.D.N.C.1985).

CERCLA also suggests that the Government "incurs" costs when it reimburses a private PRP. Under § 122(a), a private PRP may enter into an agreement with the Government to perform any response action, whereby the Government agrees to reim-

---

PRP private parties for costs incurred in private response actions taken under § 106(a), see 42 U.S.C. § 9611(a)(2). CERCLA expressly provides for Government cost recovery both when the Government takes remedial action itself and when a non-PRP private party has been reimbursed with government funds. Defendants point out, however, that CERCLA establishes two different cost recovery methods. According to defendants, the provision of two different methods indicates that Congress distinguished between taking remedial action and reimbursing a private party.

Where the Government takes remedial actions within its authority under § 104, defendants explain, it "incurs" response costs and may recover its costs from responsible parties under § 107(a)(4)(A). When government funds have been used to reimburse a non-PRP private party, however, CERCLA expressly states that the Government obtains, through subrogation, the rights of the reimbursed party to sue PRPs. See 42 U.S.C. § 9612(c). Defendants argue that CERCLA's subrogation provisions suggest that the Government does not "incur" response costs when

government funds are used to reimburse a private party, because, if the Government were understood to have "incurred" costs by reimbursing the private party, it would choose to proceed under § 107(a)(4)(A) where it has more rights rather than under § 112(c), where it is subrogated to the rights of the private party. Thus, if the Government were understood to have "inured" costs by reimbursing a private party, CERCLA's subrogation provisions would serve no purpose.

Defendants' argument is misleading, however, because, as explained in the text below, CERCLA also authorizes the Government to enter into an agreement whereby it agrees to reimburse a PRP for certain response costs. See 42 U.S.C. § 9622(b). CERCLA specifically states that the Government shall seek recovery of such reimbursement under § 107. See 42 U.S.C. § 9622(b). Because CERCLA speaks of reimbursement in connection with a § 107 cost recovery action, defendants' argument that "incurred" costs under CERCLA cannot include money spent reimbursing a private party for costs of response is unconvincing.

burse the private PRP for certain of its costs. *See* 42 U.S.C. § 9622(a), (b). CERCLA expressly provides that where the Government provides such reimbursement, it may seek to recover that amount under § 107. *See* 42 U.S.C. § 9622(b). Thus, CERCLA clearly envisions the Government to have "incurred" such costs within the meaning of § 107. In light of the State's statutory mandate and CERCLA's own interpretation of the term "incurred," this Court concludes that the State "incurred" the $3.5 million it spent reimbursing certain response actions of the Town.

■ Finally, asserting that the ECL differs from CERCLA because it does not specifically provide a mechanism for the recovery of costs expended to reimburse a private party,[5] defendants argue that the State has no authority under state law to seek recovery of its EQBA funds from third parties. Rather, defendants argue, under the EQBA, municipalities are obligated to pursue third-party cost recovery, and the municipalities are then obligated to pay to the State the State's share of any responsible party payments that become available. *See* ECL 52–0303(4). Defendants therefore argue that because the Attorney General may only act within his authority under state law, and because the New York state legislature has assigned the authority to bring cost recovery actions to the Town, and not the State, the State's cost recovery claims are *ultra vires*.

Although the New York state legislature may have assigned authority to bring a cost recovery action to the municipality, and may not have specifically authorized the State to seek recovery, I cannot conclude that, by negative implication, the State is prohibited from proceeding under CERCLA. The ECL

specifically reserves the State's right to seek appropriate relief pursuant to statutory and common law authority. *See* ECL § 27–1313(6). Regardless of which pocket the money came from, *see U.S. v. Rohm & Haas,* 2 F.3d 1265, 1274–75 (3 Cir.1993) as long as the State incurred response costs that were not inconsistent with the NCP at a facility from which there was a release or threatened release of hazardous substances, it may seek recovery under CERCLA.

a. *Whether the State, as a PRP, is limited to a claim for contribution under § 113*

Defendants argue that even if this Court declines to dismiss the State's CERCLA claims in their entirety, the State should be limited to a claim for contribution under § 113 of CERCLA because its agency, third-party defendant Department of Transportation ("DOT"), is a PRP. Since this motion was filed, however, the Court has granted DOT's motion for summary judgment. Because the State is no longer a PRP, the Court finds it unnecessary to decide whether the State's potential liability for contribution affects its ability to bring an action for joint and several liability under § 107(a).

b. *Whether alleged improprieties in the EQBA funding preclude the State's CERCLA claim*

■ Defendants also argue that even if this Court finds that the monies used to reimburse the Town are response costs, defendants should not be required to reimburse the State for such monies because the State granted them pursuant to EQBA regulations that were void *ab initio*. New York State Environmental Conservation Law § 52–0303 provides that the State may provide assistance under the EQBA only after it has made

---

5. The ECL, like CERCLA, defendants explain, provides two mechanisms for implementing remedial programs at inactive hazardous waste sites: (1) the DEC may order a municipality or other PRP to develop and implement a remedial program; *see* ECL § 27–1313(3); or (2) the DEC may develop and implement its own remedial program, *see* ECL § 27–1313(5)(b), (c) & (d). The ECL also establishes two funds for use at inactive hazardous waste sites. The State's Hazardous Waste Remedial Fund ("HWRF") funds response actions implemented by the DEC. *See* State Finance Law § 97–b. The EQBA, on the

other hand, allows the DEC to provide "grants" to municipalities that agree to remediate sites owned and/or operated by municipalities. *See* ECL §§ 27–1313(5)(g), 52–0303; State Finance Law § 97–a. Unlike CERCLA, which specifically provides that the Government has a § 112 subrogation action when it reimburses a non-PRP private party or a § 107 cost recovery action when it cooperates with a PRP, the ECL does not specifically provide the State with any mechanism to recover its funds when it reimburses a municipality.

an eligibility determination under Article 27 of the ECL. Under Article 27, eligibility depends upon the State finding "that hazardous wastes at an inactive hazardous waste disposal site constitute a significant threat to the environment." ECL § 27–1313(3)(a).

Defendants argue that the State could not have made such a finding in 1989 when it entered into the Consent Order with the Town, because from December 2, 1987 through May 20, 1992, (when new regulations were adopted), the DEC regulations implementing the EQBA and defining "significant threat" were nonexistent, having been declared null and void for vagueness under the New York Constitution. *In re N.Y. State Superfund Coalition, Inc.,* 75 N.Y.2d 88, 550 N.Y.S.2d 879, 881, 550 N.E.2d 155 (1989), held that because the DEC's regulation equated the statute's definition of "hazardous waste" with "significant threat" in such a way that the mere presence of hazardous waste automatically supported a "significant threat" determination, the regulation was invalid and the entire regulatory framework annulled.

The State does not dispute defendants' argument that its regulation was null and void, but argues that the EQBA funding mechanism is irrelevant to the State's CERCLA claims, because the liability provisions of CERCLA § 107(a), apply "notwithstanding any other provision or rule of law."

CERCLA is a strict liability statute, with only a limited number of statutorily-defined defenses available. The defenses are that the release was caused solely by an act of God or war, or that the release was caused solely by a third party whose actions were not foreseeable by the defendant, who was exercising due care with respect to the hazardous substance. *See General Electric Co. v. Litton Industrial Automation Systems, Inc.,* 920 F.2d 1415, 1418 (8th Cir.1990)

(citing 42 U.S.C. § 9607(b)) (other citations omitted), *cert. denied,* 499 U.S. 937, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991). A plaintiff's compliance with state law is not a predicate to CERCLA liability. *Cf. United States v. Rohm & Haas Co.,* 2 F.3d 1265, 1274 (3d Cir.1993) ("The opening clause—'notwithstanding any other provision or rule of law'—decrees that where another statute, as well as § 107(a), is applicable, the liability provisions of § 107(a) will prevail even where the commands of the two statutes are in conflict."); *General Electric Co.,* 920 F.2d at 1418 ("CERCLA does not provide for an 'unclean hands' defense.... Thus, the motives of the private party attempting to recoup response costs ... are irrelevant."); *Town of Wallkill v. Tesa Tape, Inc.,* 891 F.Supp. 955, 960 (S.D.N.Y.1995) ("noncompliance with state regulations does not preclude CERCLA liability.").[6]

Moreover, relying on *United States v. Fairchild Industries, Inc.,* 766 F.Supp. 405 (D.Md.1991), the State argues that a "significant threat" is not an element of liability under CERCLA. Indeed, § 107 does not contain a reference to any requisite quantum of risk. In *Fairchild,* the court struck an affirmative defense that the United States had not alleged imminent and substantial endangerment at the subject site. The court held that the elements of a claim under § 107(a) did not require proof of an imminent and substantial endangerment, and the attack on the government's right to recover its costs was through proof of an inconsistency with the NCP. *See Fairchild,* 766 F.Supp. at 409–410.

Defendants also argue that because the State failed to comply with State Finance Law in providing EQBA funds, it is entitled to a full refund from the Town, and therefore, has not suffered any damages, which is

---

**6.** Defendants also argue that because the Town is liable as a generator and arranger for the disposal of hazardous waste, and not merely as an owner/operator, it was not eligible for EQBA funding. *See* ECL § 27–1313(5)(g) (the State shall provide EQBA funds for "eligible design and construction costs of such remedial program for which such municipality is liable solely because of its ownership and/or operation of such site and which are not ... paid by a responsible

party ..."). Defendants assert that they need not provide evidence here that the Town is also liable as a generator or arranger, because the State, having failed to allege that it made these findings in its complaint, has failed to state a claim. This argument is meritless. That the State's response costs were incurred in accordance with state law is not an element of CERCLA.

a necessary element of a CERCLA claim. Defendants assert that the State may only provide assistance to a municipality under the EQBA if the project is "consistent with [§ 97–b] of the state finance law." ECL § 52–0301. Section 97–b(4) requires that the State make a finding that "all reasonable efforts to secure voluntary agreement to pay the costs of necessary remedial actions from owners or operators of inactive hazardous waste sites or other responsible persons have been made ..." State Finance Law § 97–b(4). Defendants argue that here the State did not make and could not have made such a finding. According to defendants, the fact that the Town signed a Consent Order, by which it agreed to pay the remedial costs relative to the landfill belies any claim by the State that it made the requisite finding under § 97–b(4). Defendants, however, appear to misunderstand the law. ECL § 27–1313(5)(g) requires that a PRP-municipality enter an agreement before it can become eligible for EQBA funding.

### 3. Oversight Costs

In addition to its costs in reimbursing the Town pursuant to the EQBA, the State seeks the costs incurred in overseeing (1) the Town's work in preparation of the RI/FS, (2) the Town's compliance with the remedial action ordered to be undertaken by the Town, and (3) the remedy set forth in the ROD. In arguing that the State is not entitled to costs incurred in overseeing the remedial activities of the Town, defendants rely upon *U.S. v. Rohm & Haas Company*, 2 F.3d 1265 (3d Cir.1993), and cases following it. In opposi-tion, the State relies on *New York v. Shore Realty*, 759 F.2d 1032, 1043 (2d Cir.1985), and several recent district court cases declining to follow *Rohm & Haas*. The United States, a third-party defendant, has also filed a brief in support of the recoverability of oversight costs under CERCLA.

Reasoning that, as a remedial statute, CERCLA should be construed liberally to effectuate its goals, prior to 1993 courts, including the Second Circuit, *see Shore Realty*, 759 F.2d at 1043, universally held that CERCLA permitted the EPA to recover its oversight costs. *See United States v. Ekotek, Inc.*, 1995 WL 580079 (D.Utah, Sept. 11, 1995, *3) (listing cases). In 1993, however, *Rohm & Haas* adopted a new standard of review, which it believed was compelled by the Supreme Court's decision in *National Cable Television Ass'n v. United States*, 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974).[7] *Rohm & Haas* noted that *National Cable* has been "interpreted by the Supreme Court as standing for the proposition that Congress must indicate clearly its intention to delegate to the Executive the discretionary authority to recover administrative costs not inuring directly to the benefit of regulated parties by imposing additional financial burdens, whether characterized as 'fees' or 'taxes,' on those parties." *Rohm & Haas*, 2 F.3d at 1273 (quoting *Skinner v. Mid-America Pipeline Co.*, 490 U.S. 212, 224, 109 S.Ct. 1726, 1728, 104 L.Ed.2d 250 (1989)).

Because the government's oversight of a private party's compliance in cleaning up a site is intended to protect the public interest

---

7. *National Cable* addressed the Independent Offices Appropriation Act of 1952, 31 U.S.C. § 483a (amended and codified at 31 U.S.C. § 9701), which authorized federal agencies to collect fees from the recipients of federal work, services, or licenses, taking into account "direct and indirect costs to the Government, value to the recipient, public policy or interest served, and other pertinent facts." 65 Stat. 290, *quoted in National Cable*, 415 U.S. at 337, 94 S.Ct. at 1147.

The Court narrowly construed the Appropriations Act—to permit fees based solely on "value to the recipient,"—in order to avoid any constitutional challenge to the statute as an unauthorized delegation of power. *National Cable*, 415 U.S. at 342–44, 94 S.Ct. at 1150. In doing so, the Court distinguished between "taxes," which benefit so-ciety generally, and a "fee," which "bestows a benefit on the applicant, not shared by other members of society." *National Cable*, 415 U.S. at 340–41, 94 S.Ct. at 1149. A broader construction would allow fees based on benefits to the general public, investing agencies with the power to levy taxes, which the Constitution expressly reserves to Congress. *National Cable*, 415 U.S. at 341, 94 S.Ct. at 1149. The key to the decision was the Court's conclusion that the uncertain and amorphous nature of the interest which the Appropriations Act allowed the federal agency to consider in making the assessment—"[t]he words 'public policy or interest served, and other pertinent facts' ... whatever may be their ultimate reach"—created the inherent danger of the agency overreaching its authority. *National Cable*, 415 U.S. at 343, 94 S.Ct. at 1150.

rather than the interests of those being overseen, *Rohm & Haas* reasoned that its costs were "administrative costs" of the kind discussed in *National Cable.* *See Rohm & Haas,* 2 F.3d at 1273–74. Thus, instead of attempting to determine whether CERCLA's language, when reasonably construed, contemplated the recovery of oversight costs and deferring to the administering agency's reasonable construction,[8] *Rohm & Haas* looked for a "clear congressional statement" permitting the imposition of "an agency's costs on a regulated private party." *Rohm & Haas,* 2 F.3d at 1274 n. 14. *Rohm & Haas* found no such statement in CERCLA.

*Rohm & Haas* has been followed in the Third Circuit, of course. *See FMC Corp. v. United States Dept. of Commerce,* 29 F.3d 833, 850 (3d Cir.1994); *United States v. Witco Corp.,* 853 F.Supp. 139, 142 (E.D.Pa.1994); *United States v. Atlas Minerals & Chemicals,* 851 F.Supp. 639, 647–50 (E.D.Pa.1994); *United States v. Serafini,* 898 F.Supp. 287, 290–92 (M.D.Pa.1994). It also has been adopted by three districts courts outside the Third Circuit. *See Bancamerica Commercial Corp. v. Trinity Industries, Inc.,* 900 F.Supp. 1427, 1466–67 (D.Kansas 1995); *County of Santa Clara v. Meyers Industries,* 1994 U.S.Dist. LEXIS 9847 (N.D.Cal. *4–*9); *Central Maine Power Co. v. F.J. O'Connor Co.,* 838 F.Supp. 641 (D.Maine 1993).

Other district courts, however, have flatly rejected the *Rohm & Haas* rule. *See, e.g., State of California v. Celtor Chemical Corp.,* 901 F.Supp. 1481, 1489 (N.D.Cal.1995) (noting that Ninth Circuit had held that Supreme Court had not announced universal definitions of "tax" or "fee" in *National Cable,* but merely determined meaning of terms in statute at issue, and holding that CERCLA, reasonably construed, permitted recovery of oversight costs) (citing *Union Pacific R.R. v. Public Utility Comm'n,* 899 F.2d 854, 859–61 (9th Cir.1990)); *U.S. v. Ekotek,* 1995 WL 580079 at *4–*7; *United States v. Lowe,* 864 F.Supp. 628, 632 (S.D.Tex.1994) (finding oversight costs were directly authorized by CERCLA, but also rejecting rule of *Rohm & Haas* because it would lead to "incongruous result that the EPA could recover the costs of overseeing its own contractors, but not the costs of overseeing those hired by the potentially responsible parties."); *California Dep't of Toxic Subst. Control v. SnyderGeneral Corp.,* 876 F.Supp. 222, 224–25 (E.D.Cal. 1994) (finding that oversight costs fall easily within definitions of "removal" and "remedial").[9]

Distinguishing *National Cable,* these courts have based their decisions on traditional standards of statutory construction, and held that oversight costs fall comfortably within the broad statutory definitions of "removal" and "remedial costs," *see* 42 U.S.C. §§ 9601(23), (24) and (25).[10] For example, *Ekotek* reasoned that the *Rohm & Haas* court's hypercritical analysis of CERCLA was not supported by the language of *National Cable* or its progeny. It rejected *Rohm & Haas* on the grounds that it "rests upon the unsupported assertion that the principle identified in *National Cable* is not confined to the narrow set of circumstances present in that case, an assertion which is

---

8. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984).

9. In an alternative holding applicable here, *SnyderGeneral Corp.* allowed the recovery of oversight expenses to a state environmental agency, because, it reasoned, where the State, and not the federal government, seeks recovery of costs the federal separation of powers issue implicated in *Rohm & Haas* was not present. *See SnyderGeneral Corp.,* 876 F.Supp. at 225.

10. CERCLA broadly defines "remove" and "removal" to include, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage.

42 U.S.C. § 9601(23). CERCLA defines "remedy" and "remedial action" to include "any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment." 42 U.S.C. § 9601(24). Finally, CERCLA defines "respond" and "response" to include "remove, removal, remedy, and remedial action; all such terms (including the terms 'removal' and 'remedial action') include enforcement activities related thereto." 42 U.S.C. § 9601(25).

contradicted by the case law." *Ekotek,* 1995 WL 580079 at *5 (internal quotation and citation omitted). *Ekotek* discussed decisions of the First, Fourth, Fifth, Ninth, Tenth and District of Columbia Circuits that have read the language in *National Cable* as limited to its specific statutory context, upheld agency authority to raise revenue through the imposition of fees for the provisions of services, or held that a general benefit to the public did not render invalid an agency's imposition of costs upon a particular applicant or licensee. *Ekotek,* 1995 WL 580079 at *5–*6.

*Ekotek* further explained that although *National Cable* identified a potential separation of powers problem, arising when a regulatory agency is given unfettered authority to recoup its operating costs against an entire industry, the specter of a regulatory agency run amok is not present when the EPA is overseeing the remediation of a specific hazardous waste site.

> [In this context, the EPA] is not an agency seeking to pass along its general administrative costs against the innocent members of a regulated industry through the imposition of general licensing fees, but is an agency assessing the damages caused or contributed to by specific persons. The evil which concerned the Supreme Court in *National Cable* poses no threat here, and the weapon of strict statutory construction may be laid aside.

*Ekotek,* 1995 WL 580079 at *6.

Finally, *Ekotek* noted that recovery of oversight costs is consistent with the general policy of CERCLA, and that an approach that does not permit the recovery of EPA oversight costs directly conflicts with CERCLA's goal of compelling private parties to perform cleanup operations. *Ekotek,* 1995 WL 580079 at *8.

This Court agrees with the majority of district courts rejecting the *Rohm & Haas* rule. No other court has read the *National Cable* doctrine as broadly as *Rohm & Haas.* In fact, the Supreme Court and other courts of appeals have narrowly construed *National Cable. See, e.g., Federal Energy Admin. v. Algonquin SNG, Inc.,* 426 U.S. 548, 560–61, 96 S.Ct. 2295, 2302–03, 49 L.Ed.2d 49 (1976); *San Juan Cellular Tel. Co. v. Public Serv.*

*Comm'n,* 967 F.2d 683, 687 (1st Cir.1992); *Union Pac. R.R. v. Public Util. Comm'n,* 899 F.2d 854, 859–61 (9th Cir.1990); *Phillips Petroleum Co. v. FERC,* 786 F.2d 370, 375–76 (10th Cir.), *cert. denied,* 479 U.S. 823, 107 S.Ct. 92, 93 L.Ed.2d 44 (1986); *South Carolina ex re. Tindal v. Block,* 717 F.2d 874, 887 (4th Cir.1983), *cert. denied,* 465 U.S. 1080, 104 S.Ct. 1444, 79 L.Ed.2d 764 (1984); *Mississippi Power & Light Co. v. NRC,* 601 F.2d 223, 229 (5th Cir.1979), *cert. denied,* 444 U.S. 1102, 100 S.Ct. 1066, 62 L.Ed.2d 787 (1980).

Moreover, these cases construing *National Cable* have addressed whether a particular fee is a user fee or tax for purposes of the non-delegation doctrine. CERCLA response costs, however, constitute neither a fee nor a tax. They are payments by responsible parties, in restitution, for cleanup costs. *See Continental Ins. Cos. v. Northeastern Pharmaceutical & Chemical Co.,* 842 F.2d 977, 987 (8th Cir.), *cert. denied,* 488 U.S. 821, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988); *United States v. Monsanto Co.,* 858 F.2d 160, 174–75 (4th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989). CERCLA does not assess user charges on a regulated industry; rather, it is a remedial statute. *See United States v. R.W. Meyer,* 889 F.2d 1497, 1504 (6th Cir.1989), *cert. denied,* 494 U.S. 1057, 110 S.Ct. 1527, 108 L.Ed.2d 767 (1990).

Courts have recognized that, as a remedial statute, CERCLA should be construed broadly to achieve its objectives. For example, in *Shore Realty,* 759 F.2d at 1037, the district court directed responsible parties to conduct a site cleanup, "subject to monitoring" by the State, and the court awarded response costs under § 107(a)(4)(A). The Second Circuit affirmed holding that the "State's costs in assessing the conditions of the site and supervising the removal of the drums of hazardous waste squarely fall within CERCLA's definition of response costs, even though the State is not undertaking to do the removal." *Shore Realty,* 759 F.2d at 1042–43. *See also United States v. Hardage,* 982 F.2d 1436, 1441 (10th Cir.1992) (CERCLA § 107 mandates that EPA recover "all costs of removal or remedial response ac-

**327**

tions, incurred not inconsistent with the NCP.") (emphasis in original), *cert. denied,* 114 S.Ct. 300 (1993). Because this Court finds that oversight costs fall squarely within the statutory definitions of "removal" and "remedial," *see* 42 U.S.C. §§ 9601(23), (24) & (25), defendants' motion for summary judgment dismissing the State's claims for oversight costs is denied.

In conclusion, defendants' motion for summary judgment is denied.

SO ORDERED.